424

[No. C. D. 1926.   En Banc.   May 14, 1964.]

*In the Matter of the Disciplinary Proceeding Against* LLOYD HOLTZ, *an Attorney at Law.*\*

T. M. Royce, for Board of Governors.

Max R. Nicolai, for respondent.

HALE, J.—Indolence, laziness, negligence in the gross, want of diligence—these deficiencies in an attorney are as costly to a client in the loss or curtailment of his rights as

\*Reported in 392 P. (2d) 242.

they are burdensome to the profession and the courts in general. Because these shortcomings may have the same damaging effect as does professional incompetence, or even conduct involving moral turpitude, they are quite properly, in extreme cases, the subject of inquiry in a disciplinary proceeding. This disciplinary proceeding illustrates the point, affecting as it does an attorney of good moral reputation and character.

Mr. Lloyd Holtz, an attorney at law, living and practicing in Seattle, in July, 1956, undertook to represent William J. Schubert and J. Palmer Smith in a personal injury action stemming from an automobile accident. He prepared a complaint and had it verified by Schubert on July 19, 1956; it was not filed until December 16, 1958. Demand for trial by jury, filed by respondent January 26, 1959, preceded by 1 day the noting of the cause for trial on September 23, 1959. But less than 2 weeks before trial, the defendant, on September 11, 1959, moved in the alternative for a stay of trial or dismissal, claiming that the plaintiffs had failed to keep their promised appointments of August 7th with the doctor for pretrial medical examinations. On August 7th, Mr. Holtz had advised opposing counsel that his clients were probably out of town and would not report to the doctor's office. He made known his inability to locate them. He repeated these messages to opposing counsel on August 17 and September 1, 1959. So it was that, pursuant to the defendant's motion on September 11th, but by agreement of counsel, the case was stricken from the trial calendar to be renoted for trial later. Neither party ever renoted it for trial.

On May 7, 1959, Mr. Holtz had written to Schubert advising him of the September 23rd trial date, but his letter was returned by the post office as Schubert had moved without notifying his attorney. The attorney did not write a similar letter to his other client, Smith, mistakenly assuming that the two parties were in touch with each other. By September 11, 1959, Holtz had actually lost track of his clients.

In the meantime, Smith had moved to Oregon late in 1959, and, on November 27, 1959, attorney Harvey J. Osborn of Portland wrote Mr. Holtz on Smith's behalf inquiring as to the status of the case. Mr. Holtz made no response to this letter. January 18, 1960, Smith wrote the executive secretary of the Washington State Bar Association commenting on the delay in the handling of his case, sending a copy to Holtz.

January 22, 1960, Holtz answered this by writing to the executive secretary saying that he was having the trial set for June by agreement and that he would arrange for medical examinations. Neither action took place.

About one year later, January 9, 1961, defendant moved for a dismissal of the Schubert and Smith claims under Rule of Pleading, Practice and Procedure 41.04W, RCW Vol. 0, on the ground that the case had not been noted for trial for more than a year. On three separate occasions, respondent had the motion stricken from the calendar and renoted for hearing, the last date of hearing being August 24, 1961, when, at respondent's request, the motion was stricken and never renoted.

The case again lay dormant with the motion to dismiss pending until April 6, 1962, when Mr. Osborn, on behalf of plaintiff Smith, wrote to the Washington State Bar Association requesting its intervention in obtaining a report from Mr. Holtz, and sending a copy of the letter to respondent. Respondent did not reply but telephoned Mr. Osborn that he would call upon him in Portland. Following this telephone call, nothing happened until August when respondent, on advice from a member of the local administrative committee, went to Portland to get the matter settled.

Respondent told Mr. Osborn and plaintiff Smith that the cause was subject to dismissal; that the insurance company would pay no more than $200; and that he would make a fair and reasonable settlement of plaintiffs' claims. Allowing time for plaintiffs to consider their claims further, Mr. Holtz returned to Portland a week or two later to complete the settlement agreement. Each client received $900 from

Mr. Holtz personally, plus $100 cash from the defendant's insurance company, and each executed a final release. Both Smith and Schubert expressed satisfaction with the settlement, and the amount was arrived at without coercion or overreaching and accepted by the clients without reservation or threat of recrimination.

The case comes here from a formal complaint and hearing before the trial committee of the Washington State Bar Association consisting of Carl H. Skoog, David C. Hunter and Robert B. Albertson. The committee found respondent guilty of gross neglect in his handling of the Smith and Schubert claims, wanting in candor and truthfulness in dealing with his clients and the Washington State Bar Association, and with having been twice before reprimanded because of neglect of duty to his clients. The hearing panel concluded that respondent's conduct violated Canons of Professional Ethics 15, 22, and 29, RCW Vol. 0, and its recommendation of suspension for a period of 30 days received the concurrence of the Board of Governors.

Canon of Professional Ethics 15, RCW Vol. 0, 4 Orland's Wash. Prac. 830, reads, in part:

"The lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability,' to the end that nothing be taken or be withheld from him . . . ."

■ An attorney who, on behalf of his clients, commences an action for personal injuries in 1956 and has not brought the case on for trial by 1962, in the meanwhile allowing the cause to become liable to dismissal for want of diligence, violates the above-quoted provision of Canon 15, *supra.*

■ Respondent's letter of January 22, 1960, to the executive secretary of the Washington State Bar Association advising that by agreement of counsel the case would be set for trial in June and that he would, in addition, make arrangements for plaintiffs' physical examinations, does not, as respondent contends, relate merely to future conduct, but it must be deemed a promissory assurance of his present intentions. His almost total inaction following

these promises gives us no reason to assume that he intended to comply with them or that he made such promises other than with a purpose to avoid prompting from the Washington State Bar Association and pressure by his clients in the near future. The hearing panel's conclusion on this point—that respondent did not meet the requirements of Canon of Professional Ethics 22, RCW Vol. 0, 4 Orland's Wash. Prac. 836, that "The conduct of the lawyer before the court and with other lawyers should be characterized by candor and fairness."—finds support in a later telephone conversation.

During June, 1961, respondent by telephone told the executive secretary of the Bar Association that the case had been set for trial when he knew at the time that a motion to dismiss was then pending. We agree with the hearing panel and the Board of Governors that the delays, want of diligence in and devotion to the client's cause demonstrated by this record, contravene Canon of Professional Ethics 29, RCW Vol. 0, 4 Orland's Wash. Prac. 847, in that they show a failure to uphold the honor and maintain the dignity of the profession and are a denial of the duty to improve not only the law but the administration of justice.

Respondent shows two facts in mitigation: (1) Payment of settlement moneys to his clients largely from his own pocket in full satisfaction of his clients' damages, and (2) emotional illness which prevented him from fulfilling his duties to his clients and the profession.

In November, 1959, a psychiatrist, consulted by respondent, diagnosed his condition as mental depression. The doctor found the patient to be indecisive, withdrawn, fatigued, and suffering intense distress—a condition which pre-existed the examination for several years. Likewise, he found respondent lacking in physical energy and harboring suicidal thoughts, but his intellectual processes otherwise seemed intact, and he was of sound mind.

A period of therapy followed, consisting of psychotherapeutic interviews—at first averaging 2 to 3 hours a week. By June of 1960, the doctor reduced the therapy to 1 hour

a week, and, by October, respondent needed only intermittent treatment. At no time preceding or following treatment could it be said that Mr. Holtz was intellectually unable to comprehend or appreciate his duties to his clients and the profession.

◼ Though the mental and emotional depression suffered by respondent may rightly be considered in mitigation and taken in conjunction with the settlement of his clients' losses at his own expense as relieving him of the odium of moral turpitude, it does not erase the violation. Particularly is this so in the light of the hearing panel's explicit findings that (1) Mr. Holtz had been formally reprimanded by the Board of Governors in 1952 for delay in handling legal matters referred to him before 1946 involving his clients N. J. Snelson, *et ux.*; and (2) on August 31, 1962, Mr. Holtz received a reprimand from the Board of Governors for delay in handling a personal injury action for his clients Albert, Fred and Gennell Green, undertaken by respondent prior to October 20, 1954.

From the moment respondent undertook to act as attorney for Schubert and Smith in their personal injury action, he had innumerable chances to avert the final disparaging outcome. He could have explained his condition to his clients, leaving them free to choose their own course of action; he was competent to make timely withdrawal as counsel, or with his clients' consent refer the case to other lawyers; and he could have associated other attorneys with him in the case so as to assure its prosecution with reasonable diligence. Instead, respondent did nothing whatever—and his clients and the Bar and he personally suffered from his inaction and avoidance of professional responsibility.

We think the findings, conclusions and recommendations of the hearing panel as affirmed by the Board of Governors appropriate to the situation.

Respondent is, therefore, suspended from the practice of law for a period of 30 days.

OTT, C. J., FINLEY and ROSELLINI, JJ., concur.

HAMILTON, J., concurs in the result.

HILL, J. (concurring in the result)—I concur in the result of the majority opinion, but I cannot agree that Mr. Holtz was either indolent or lazy. It would seem to me that trying to do too much, without competent help, comes nearer to being the explanation of the derelictions that are now before us. Whatever may have been the cause, the result is a violation of the Canons of Professional Ethics, and I am constrained to accept the recommendations of the hearing panel as affirmed by the Board of Governors.

DONWORTH and WEAVER, JJ., concur with HILL, J.

HUNTER, J. (dissenting)—I dissent. I disagree with the majority that the respondent attorney was lazy or indolent. The record shows overwork, lack of organization, and procrastination. The respondent's emotional illness indicates some excuse for his conduct. Nevertheless, I agree with the majority that Canons of Professional Ethics 15, 22, and 29, RCW Vol. 0, were violated.

The crux of this case is the degree of punishment that should be imposed. The record discloses that the respondent voluntarily made a complete and satisfactory settlement with his former clients for any damages sustained by them from improper attention to their litigation, at a cost to the respondent of $1,800. This admission of improper disposition of his clients' business, their resulting damages, and payment for same, constituted good faith, self-imposed discipline and punishment. Further punishment by way of reprimand, in my opinion, would therefore be sufficient.