[No. C.D. 4553.  En Banc.  September 3, 1970.]

*In the Matter of the Disciplinary Proceeding Against* CHAS. H. W. TALBOT, *an Attorney at Law.**

Jack P. Scholfield, for Board of Governors.

*Chas. H. W. Talbot*, pro se.

HALE, J.—The Washington State Bar Association brings this disciplinary proceeding against attorney Chas. H. W. Talbot. A hearing panel consisting of attorneys Thomas G. McCrea, as Chairman, and Raymond W. Haman and Howard P. Pruzan, entered findings and conclusions and recommended to the Board of Governors of the Washington State Bar Association that respondent be suspended from the practice of law for 30 days on item 1, 30 days on item 2 of the complaint, the two suspensions to run concurrently, and that a formal reprimand be delivered on item 3. The Board of Governors concurred in the findings, conclusions and recommendation. This court agrees.

Our review of the record shows that the statement of the case as contained in the bar association's brief is supported by the evidence and aptly summarizes the facts. We adopt it and set it forth verbatim, as follows:

Mr. Talbot was admitted to the practice of law in this

*Reported in 474 P.2d 88.

state on April 13, 1956, and has practiced in King County at all times since. He received a letter of censure from the Washington State Bar Association dated April 30, 1969.

### Item I of Complaint

Mr. George Dennis entered the Veterans Administration Hospital in Seattle, Washington, on March 1, 1965, for surgery on his knee. He was treated there by a Dr. Thieme up until sometime in July 1965. Surgery was performed and he was discharged on April 18, 1965, but had to return several times to the hospital because an infection had developed at the sight of the surgery. The infection was not controlled and the leg was amputated above the knee in February 1966. Mr. Dennis employed Mr. Talbot as an attorney at law to represent him in his possible malpractice case against Dr. Thieme and the United States Government in February 22, 1968. The contract of employment was signed on that date.

A summons and complaint were prepared and served on Dr. Thieme on April 3, 1968. The complaint in *Dennis v. Thieme* was not filed until March 12, 1969 following a conference between Mr. Talbot and a member of the King County Local Administrative Committee.

Mr. Paul Gibbs, Attorney at Law, entered an appearance for the defendant Thieme and on May 29, 1968, sent to Mr. Talbot by mail a signed stipulation for obtaining medical records from the Veterans Administration Hospital. It appears that this stipulation was never used and that there were no further significant developments in the case until after Mr. Dennis sent his letter of complaint to the Washington State Bar Association.

Mr. Dennis brought to Mr. Talbot's office on his first visit certain Veterans Administration Board of Appeals' records regarding his case.

Mr. Dennis made numerous attempts to contact Mr. Talbot by telephone and letter to get information regarding his case and Mr. Talbot failed to respond to these inquiries. Mr. Talbot had no explanation for his failure to answer Mr. Dennis' telephone calls.

There is good reason to believe the statute of limitations ran on Mr. Dennis' claim against Dr. Thieme in July of 1968 and against any action Mr. Dennis might have had against the United States Government under the Federal Tort Claims Act on approximately April 19, 1968.

## Item II of Complaint

In June 1968, Mr. Edward Merges acting as attorney for plaintiff in *Pooy Lee v. Willie Davis*, Cause No. 153655, Seattle District Justice Court, caused a Writ of Garnishment to be served on the Boeing Company.

Shortly thereafter he was contacted by Mr. Chas. Talbot, representing Mr. Davis. An agreement was made that an order dismissing the writ would be used by Mr. Talbot to obtain the $174.49 owed by Boeing to the defendant Davis and that amount would be forwarded to Mr. Merges by Mr. Talbot.

Mr. Merges never received the money. He called Mr. Talbot on the telephone many times about it but Mr. Talbot never responded to these calls. Letters were written to Mr. Talbot about the matter on August 23, 1968 and December 5, 1968. Mr. Merges then wrote regarding the matter to the Washington State Bar Association on February 4, 1969.

The money was released to the defendant Davis by Boeing in December 1968.

The information regarding the status of the garnishment was readily available.

## Item III of Complaint

The complaints of Mr. Dennis and Mr. Merges were referred to Mr. George Ferrer of the King County Local Administrative Committee for investigation and report. Mr. Ferrer left a telephone call for Mr. Talbot but received no response. Finally, an interview was arranged for March 6, 1969, and Mr. Talbot was advised by Mr. Ferrer of the existence and nature of the two complaints and requested Mr. Talbot to bring his file involving both matters to the conference. Mr. Talbot appeared and brought only his file involving Mr. Dennis. When Mr. Ferrer asked about the case of Lee v. Davis and Mr. Merges' complaint in regard thereto, Mr. Talbot professed to have no memory of it. Mr. Ferrer asked Mr. Talbot to check it out and call him. Mr. Talbot did not call. Mr. Ferrer then wrote to Mr. Talbot on March 8 re Mr. Merges' complaint.

Mr. Talbot wrote on March 10 an explanation of his failure to contact Mr. Ferrer earlier. Mr. Ferrer wrote on March 12 and received no response. Mr. Ferrer wrote again on March 18 to Mr. Talbot and receiving no response wrote again on March 25, requesting a conference on April 4, 1969. Mr. Talbot called to postpone the con-

ference to April 8. Mr. Talbot acknowledged that he had contacted the Boeing garnishing office about ten minutes before making this call to Mr. Ferrer.

Mr. Talbot failed to appear at the scheduled April 8 conference. Several more letters to Mr. Talbot followed and a letter of May 5 requested a conference on May 16 at 10:00 a.m. At the scheduled time, Mr. Talbot again failed to appear.

Mr. Talbot wrote on May 9 summarizing his efforts to determine, but unsuccessfully, what happened to the funds covered by the garnishment.

We add that the record does not show that Mr. Talbot ever received any part of the funds released when the garnishment was lifted. Presumably the entire amount was drawn down by his client.

■ Canon of Professional Ethics 21, RCW vol. 0, requires that an attorney be punctual in attendance and concise and direct in the trial and disposition of causes. This means that he should exercise reasonable diligence and industry in tending to the affairs entrusted to him by his client. As a result of Mr. Talbot's procrastination, delay and lack of diligence, his client, Mr. Dennis, is confronted with serious and unwarranted problems. Regardless of the effect or operation of the statute of limitations on the client's personal injury claim and whatever the outcome, Mr. Talbot's procrastination added to his burdens; as a client, he had a right to expect more of his attorney. Serious and unwarranted procrastination, delay and want of diligence in taking care of legal business is properly a subject of disciplinary action under Discipline Rules for Attorneys 1.1(j). *In re Hutchins*, 67 Wn.2d 144, 406 P.2d 777 (1965); *In re Holtz*, 64 Wn.2d 424, 392 P.2d 242 (1964). The 30 days' suspension recommended on item 1 we deem appropriate.

The record supports the hearing panel's findings under item 2 that Mr. Talbot failed to live up to an agreement made with a fellow lawyer. His actions not only reflected badly on the profession as a whole but inevitably placed a fellow lawyer in a bad light with his client. It was not only a courtesy between counsel, but a time and labor-saving device to Mr. Talbot's client when Mr. Merges, represent-

ing a judgment creditor, agreed that a writ of garnishment sequestering the wages of Mr. Talbot's client be dismissed and the money released on condition that the money would be paid over to Mr. Merges. Acting on this agreement, Mr. Merges submitted to the court a motion and order dismissing the garnishment. Despite frequent demands upon Mr. Talbot, the money never was delivered to Mr. Merges.

Canon of Professional Ethics 25, RCW vol. 0, declares:

> A lawyer should not ignore known customs or practice of the bar or of a particular court, even when the law permits, without giving timely notice to the opposing counsel. As far as possible, important agreements, affecting the rights of clients, should be reduced to writing; but it is dishonorable to avoid performance of an agreement fairly made because it is not reduced to writing, as required by rules of court.

Canon of Professional Ethics 29, RCW vol. 0, provides, in part:

> He should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice.

■ Failure to abide by an agreement with a fellow lawyer, particularly when the breach redounded to the presumable benefit of the one attorney and the detriment of the other in their relationships with their clients, violated both CPE 25 and 29. Thirty days' suspension to run concurrently with the suspension imposed under item 1 we think appropriate.

As to item 3, the disciplinary rules require that the attorney against whom a complaint has been made and who is being investigated by the local administrative committee shall cooperate with the committee, furnish requested papers and documents, make explanations when asked to do so and appear before the committee at the time and place designated. DRA 2.6.

■ When asked by Mr. Ferrer, then investigating the two complaints for the local administrative committee, to explain the garnishment transaction and the arrangement with Mr. Merges, Mr. Talbot at first could not recall the

matter but promised to look into it and call Mr. Ferrer. He failed to call, and failed on three occasions to respond to Mr. Ferrer's letters requesting a conference. When a conference was scheduled between them, Mr. Talbot failed to appear, and when rescheduled for a month later, Mr. Talbot failed to appear again. His failure to cooperate placed him in violation of DRA 2.6 and merits a formal reprimand.

Accordingly, respondent attorney is suspended from the practice of the law and as a member of the bar of this court for a period of 30 days each on items 1 and 2, the suspensions to run concurrently and shall be formally reprimanded on item 3, and shall pay the costs in the amount of $474.42 as taxed in the association's statement of costs.

HUNTER, C. J., FINLEY and NEILL, JJ., and HILL, J. Pro Tem., concur.

HAMILTON, J. (concurring)—I concur in the suspension but not the length thereof.

This matter and *In re Yates*, 78 Wn.2d 243, 473 P.2d 402 (1970), were argued before this court on the same day. Inexcusable delay and procrastination constituted the underlying basis of the disciplinary proceedings in each matter. Although each proceeding deserves to be judged upon its own circumstances, and total consistency may be "the hobgoblin of little minds"; nevertheless, it is my view that some measure of consistency in the imposition of suspensions from the practice of law is desirable where the tap root of the cause is virtually identical. Because of this and because of the fact that the acropetal offshoots from the delay and procrastination, *i.e.*, undue problems for the clients and embarrassment to the profession, were similar in both cases, I would impose the same suspension in each case—45 days.

ROSELLINI and SHARP, JJ., and DONWORTH, J. Pro Tem., concur with HAMILTON, J.