[No. C.D. 6462.   En Banc.   May 25, 1978.]

*In the Matter of the Disciplinary Proceeding
Against* FRANKLIN D. LOOMOS, *an
Attorney at Law.*

---

*Leland G. Ripley,* for Bar Association.

HOROWITZ, J.—The Disciplinary Board of the Washington State Bar Association has recommended that this court suspend Franklin D. Loomos from the practice of law for a period of 30 days because of continued neglect of probate matters entrusted to him. We agree with the Board's recommendation. Due to respondent's continuing failure to complete the probate of an estate in accordance with his agreement to do so, however, we find it appropriate to impose a proviso to the suspension, described hereafter, intended to assure performance of his duty to close the estate.

Respondent Loomos was admitted to the bar in 1969. The following year he drafted a will for John Arvidson. Upon Mr. Arvidson's death in April 1971, Mrs. Arvidson asked respondent to probate the estate, and respondent agreed to do so. He filed the will and other initial papers in the King County Superior Court in November 1971, and forwarded a preliminary statement to the Inheritance Tax Division of the State Department of Revenue. Mrs. Arvidson was appointed executrix.

At the outset it must be said that the evidence shows Mrs. Arvidson was confused about her responsibilities as executrix. In July 1972 respondent gave her a statement for attorneys fees, court costs and inheritance taxes. The statement did not include a sum for creditors' claims against the estate. Mrs. Arvidson paid the sum shown on the statement, $1,412, apparently believing it also covered creditors' claims. Her testimony shows she thought she had no further responsibilities in the estate. She testified that whenever she got a bill regarding the estate she took it to respondent, who assured her he would take care of it. Respondent, on the other hand, testified he told her she would have to pay the claims herself. The Board found that respondent did not make clear to Mrs. Arvidson that she was required to pay outstanding creditors' claims, but that respondent did not receive any funds from her to pay the claims. As a result of this misunderstanding, creditors' claims served on respondent were never paid. We note that there is no evidence respondent acted in bad faith. No claim is made that respondent misappropriated funds, nor is there evidence to support such a claim.

Mrs. Arvidson did pay a sum intended by both parties to cover inheritance taxes. Respondent prepared a check for the taxes, drawn on the trust account which contained the funds Mrs. Arvidson had paid, in September 1972. The check was never sent, and was submitted in evidence, unendorsed, in this proceeding. Respondent did not know why the check was not sent. The records of the Inheritance Tax Division indicate respondent was contacted repeatedly regarding the taxes due. Each time he assured the Division's representative that the check had been sent or would be sent. So far as the record shows this tax has still not been paid; interest has been accruing since July 1972. The funds to pay it are still in the trust account, although respondent, having separated from his former law partners, is no longer signator to the account.

In August 1972 respondent withdrew from the account $750 for attorneys fees. At that time he had opened the

probate proceeding and filed a preliminary statement for inheritance tax purposes. Since that time he has done little more toward closing the estate.

A formal complaint against respondent was filed by the Disciplinary Board in April 1976. Respondent did not cooperate with the bar in its investigation. He failed to respond to orders of the Hearing Panel Officer to furnish written interrogatories and produce documents. He failed to answer Bar Association letters. He failed to appear at the hearing held October 1, 1976, causing it to be continued until October 30, 1976.

At the October 30 hearing, respondent testified in his defense that he entrusted the Arvidson estate matters to other people in his office, being too pressed by other work to attend to them himself. He also maintained he failed to cooperate with the Board because his clients' matters were more pressing, and because he felt the facts would clearly demonstrate he had not misappropriated the estate funds. He did not realize, he said, the seriousness of the proceedings against him. Respondent has filed no brief in this court, and therefore has offered no other defense to the allegations made against him.

By order issued June 7, 1977, the Disciplinary Board modified and adopted the recommendations of the Hearing Panel Officer. One censure was imposed for failure to diligently pursue the probate of the Arvidson estate in violation of DRA 1.1(i) (violation of the Code of Professional Responsibility) and (CPR) DR 6–101(A) of the Code of Professional Responsibility (neglect of a legal matter entrusted to an attorney's care). A second censure was imposed for failure to cooperate with the Bar's investigation and to respond to lawful orders of the Hearing Panel Officer, in violation of DRA 2.6(a), (b), and DRA 3.2(k). The Board also issued a reprimand for failure to pay the inheritance taxes on the Arvidson estate and to make an accounting to the executrix of the estate of the disposition of funds in respondent's possession. This conduct violated DRA 1.1(i) and (CPR) DR 6–101(A) (neglect of a legal

matter entrusted to an attorney's care), (CPR) DR 7–101(A) (failure to represent a client zealously), and (CPR) DR 9–102(B)(3) (neglect of duty to render an account of funds in an attorney's possession).

The Board did not at that time adopt the recommendation of the Hearing Panel Officer that respondent be suspended for 30 days, and that the suspension be stayed provided respondent close the estate and pay all taxes, claims and interest at no further cost to the estate. The Board instead ordered that unless respondent provided it with documentary evidence establishing that the estate had been closed, and all taxes, claims and interest paid, within 60 days of the date of the order, the Board would recommend that respondent be suspended for 30 days. The Board did not explicitly require respondent to pay all necessary expenses himself, but its mandate to close the estate was absolute. The clear implication of the order was that any costs not paid by the estate would have to be borne by respondent personally.

Costs in the Board's proceeding were assessed against respondent, and no exception to them was taken. *See* DRA 7.1(b) and (e). We assume respondent will comply with DRA 7.1(e) regarding payment of those costs.

Respondent did not appear to receive the reprimand, and did not notify the Board he would not attend. Moreover, he did not provide the Board with any evidence that he had complied with its order to close the estate. The Board therefore issued an order on September 6, 1977, recommending that respondent be suspended for 30 days pursuant to DRA 10.1.

DRA 10.1(a) provides for suspension when an attorney has a record of three or more censures and/or reprimands. Since respondent did not object to the censures and reprimand they are deemed accepted. Respondent's record thus supports a recommendation for suspension for failure to comply with the Board's order to close the estate. It is the Bar Association's contention that a 30–day suspension is

appropriate because of respondent's continued neglect of the Arvidson estate despite the Board's order to close it.

Suspension is an appropriate disciplinary measure when an attorney exhibits inexcusable delay and procrastination in pursuing matters entrusted to his care. *In re Yates,* 78 Wn.2d 243, 473 P.2d 402 (1970); *In re Vandercook,* 78 Wn.2d 301, 474 P.2d 106 (1970); *In re Talbot,* 78 Wn.2d 295, 474 P.2d 88 (1970). A heavy workload is not an excuse. *In re Fraser,* 83 Wn.2d 884, 523 P.2d 921 (1974). Furthermore, the Board's recommendation of suspension for 30 days is in keeping with this court's prior decisions. *See In re Vandercook, supra; In re Talbot, supra.*

In this case respondent's offense of ignoring the Board's order is aggravated by the harm to his client's interests caused by his total failure to take steps toward closing the estate. Neither this court nor respondent's wronged client can have any assurance that the penalty of suspension will be sufficient to make respondent attend to the neglected estate. Moreover, a suspension without more would only postpone further the time when respondent can attend to these matters. We therefore find it appropriate to impose a proviso that respondent's suspension shall continue beyond the first 30 days until respondent makes a showing satisfactory to the Disciplinary Board that the estate has been closed, and petitions the Board for reinstatement. We employed such a proviso once before in a case where we felt the attorney had to attend to important matters before he could once again be allowed to practice law. *See In re Nelson,* 87 Wn.2d 77, 549 P.2d 21 (1976).

If respondent closes the estate before the end of the initial 30–day suspension, he may, of course, petition for reinstatement (at the end of 30 days), upon a proper showing that these conditions have been fulfilled. If he does not do so at the end of the initial 30–day suspension period, the suspension shall continue until he does make the required showing. If respondent has failed to make the necessary showing at the end of 60 days beyond the first 30–day

period, the Board shall undertake further proceedings against him.

In *In re Nelson, supra,* we specified that the formal procedures of DRA 9.1(d), (e) and (g) were to be applied to the application for reinstatement. The showing required in that case was more complex than the one required here. We therefore leave it to the Board to determine the procedure respondent must follow in petitioning for reinstatement— the formal one applied in *Nelson,* or a more informal one specified by the Board.

During the period of the suspension respondent must employ another attorney, at his own expense, to complete the probate matters. All claims and costs not covered by the funds already paid by Mrs. Arvidson must be paid by respondent personally. Respondent paid himself $750 as a "partial fee" on account of the original agreed fee of $850. Yet an agent who willfully and deliberately breaches his contract of service is entitled to no compensation, even for properly performed services. Restatement (Second) of Agency § 469 (1958). The claims made against the estate in 1972 and 1973 totalled $766.14. We find that requiring respondent to satisfy these claims and to employ another attorney and close the estate at his own expense is a proper deprivation of compensation for a willful and deliberate breach of contract. Furthermore, respondent must pay all accumulated interest on the claims and the inheritance tax, for an agent is liable for losses caused to his principal, by any breach of duty. Restatement (Second) of Agency § 401 (1958). We note there is a substantial sum remaining in the attorney trust account which may of course be used to offset the various costs incurred in closing the estate.

Respondent is therefore suspended for 30 days from the date of the mandate herein, plus such additional time as may be necessary to close the estate. During the period of suspension respondent, at his own expense, must employ an attorney to close the estate, supplying the attorney with all necessary information concerning the probate proceeding for that purpose. He may then petition the Disciplinary

Board for reinstatement, upon a satisfactory showing that the estate has been closed. If respondent fails to have the estate closed within the stipulated 90 days the Disciplinary Board shall undertake further appropriate proceedings against him. We assume that respondent will comply with DRA 5.6(g) and appear before the Board of Governors to receive his reprimand should a new date be set by that Board.

As noted above, the Disciplinary Board assessed costs in its proceeding under DRA 7.1 against respondent, to which he has taken no exception. The association has requested no action by this court with respect thereto. In addition the association has filed a statement of costs occasioned by the proceedings in this court pursuant to DRA 7.2. Respondent has taken no exception to this statement.

Costs in the proceedings in this court are therefore fixed in favor of the association, in accordance with its statement, at $397.73.

It is so ordered.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, and HICKS, JJ., concur.