Frank A. CARTER, Jr., Chief
Disciplinary Counsel

v.

Anthony S. DelGIUDICE.

No. 80–189–M.P.

Supreme Court of Rhode Island.

April 25, 1980.

Frank A. Carter, Jr., pro se.

Leonard A. Kiernan, Jr., Providence, for respondent.

## OPINION

KELLEHER, Justice.

The respondent, Anthony S. DelGiudice, who was admitted to the Bar of Rhode Island on December 2, 1949, is before us on an order to show cause why we should not accept the recommendation of this court's Disciplinary Board (the Board) that he be disciplined for neglecting a matter entrusted to his care—a violation of DR6–101(A)(3) of the Code of Professional Responsibility. The recommendation follows a hearing by one of the Board's hearing panels and acceptance by the Board of the panel's report.

The record indicates that on October 17, 1972, Eugene G. Bedard sustained serious injuries while unloading rubbish from a truck parked at a sanitary landfill site located in Cranston. At that time, Bedard was working for Sanitas Waste Disposal of Rhode Island, Inc. (Sanitas), a corporation that specialized in the removal of industrial and commercial waste. Almost immediately after being injured, Bedard began to receive Workers' Compensation benefits. However, sometime in the fall of 1973, Bedard and his wife consulted with respondent, who in turn agreed with the Bedards to represent them for the specific purpose of bringing a negligence action against the operator of the landfill facility and the owner of the property upon which it was located. Bedard was injured while standing along the side of Sanitas's truck when a bulldozer that was leveling the rubbish pushed a "four by six" piece of timber up against the truck's open back door in such a manner that Bedard's chest was crushed as the timber continued to push the door up against the side of the vehicle.

In July 1974, respondent accepted an appointment as legal counsel to the Rhode Island Department of Health. By accepting this appointment, he was required to devote his full time and efforts, Mondays through Fridays 8:30 a. m. to 4:30 p. m., attending to the department's legal concerns.

On October 16, 1975, the day before the statute of limitations on the Bedards' suit was about to expire, respondent filed a negligence complaint in the Superior Court against Angelina Capuano, as the owner of the landfill site, and A. Capuano Bros., Inc., as the operator of the landfill. In their complaint, the Bedards alleged that the driver of the bulldozer was an employee of the landfill operator and an agent of the landowner. The respondent furnished copies of the complaints and summonses for service to the sheriff's office for Providence County. On the summonses he had listed the addresses at which the sheriff supposedly could find and serve each defendant. Since respondent was precluded from appearing in court in behalf of any clients other than the Department of Health, he appended to the complaints and summonses the name of Sidney Paull (Paull), an attorney whose offices are located in Warwick. Paull had consented to the use of his name.

The sheriff's records indicate that on October 22, 1975, the summonses and complaints were returned to Paull with a notation indicating that neither defendant could be served at the addresses listed on the summonses.

On October 26, 1977, the estate of Angelina Capuano and the corporate Capuano filed a motion, asking that the case against them be dismissed. Memoranda filed in support of the dismissal motion indicated that the defendants first became aware of the pendency of the negligence action when in early October 1977 a claim was filed by Paull against Angelina's estate. On December 14, 1977, an order was entered dismissing the Bedards' suit. The order was based upon a finding that the plaintiffs had failed to use reasonable diligence to locate the defendants' whereabouts once the original summonses had been returned and the fact that the A. Capuano Bros., Inc., selected by respondent was not the operator of the landfill.[1]

The Bedards testified at the hearing and informed the panel that prior to October 1975 they had been assured by respondent that "suit had been commenced" and "the papers had been served." When the Bedards would ask respondent why nothing was being heard from the defendants, he would attribute this silence to the Capuanos' being uninsured. The first time the Bedards were aware of Paull's involvement was in March 1977, when Mrs. Bedard called the Superior Court clerk's office to inquire about the status of their claims. At that time she was informed that Paull was the attorney of record. In his testimony respondent reported that shortly after filing the complaint he had mailed the entire file to Paull. He also testified that Paull had agreed to handle the Bedards' claim. On the other hand, Paull testified that his only agreement with respondent related to the affixing of Paull's name to the process. He denied receiving the file. According to Paull, once the sheriff returned the papers

to him, he called respondent, informed him what had transpired, and was told to return the papers to respondent. Paull insisted that he did as he was told. Both the Bedards and Paull recited many instances when respondent failed to appear for appointments that had been scheduled with either or all of them.

The Board's record includes a copy of one of the unserved summonses that respondent had delivered to the sheriff in 1975. The respondent conceded that he had found the original summons in his file only after Paull had called him sometime within the year preceding March 1979 to report "there was a problem about possible service." As the questioning continued, respondent maintained that Paull's call was the first indication of a lack of service. He was also at a loss to explain how the summons bearing Paull's name and Warwick address found its way into respondent's file.

In its findings the Board accepted the testimony offered by the Bedards and Paull, while rejecting respondent's version about what occurred once the Bedards had engaged his services. The Board characterized respondent's failure to follow up on the perfection of service once he was aware of the misinformation given the sheriff as "a callous disregard of his professional responsibility to the Bedards." There is little we can add to the Board's apt description of respondent's conduct. It is obvious from the record that, apart from his last-minute filing of the summons and complaint, he did nothing to protect whatever rights the Bedards might have had in their third-party negligence action. The Board has recommended the imposition of a suspension as an appropriate disciplinary sanction.

The respondent is no stranger to our Disciplinary Board. In *Murphy v. Bocchio*, 114 R.I. 679, 338 A.2d 519 (1975), there are references to the "lackadaisical attitude" and "dilatory" manner that his clients dis-

---

1. *Apparently*, the motion to dismiss alerted Paull to the lack of service because he delivered process to the sheriff which was duly served on November 9, 1977, upon the "A.

Capuano Bros., Inc." The evidence indicates that the actual operator of the landfill was "Sanitary Landfill, Inc."

played throughout that litigation. This procrastination by the plaintiffs resulted in the dismissal of their suit against Bocchio. The conduct described and attributed to the plaintiffs was in actuality the conduct of the respondent. As a consequence, the Murphys complained to the Board about his negligence, and in March 1976 the Board recommended public censure. When respondent appeared before this court in its chambers on April 1, 1976, he indicated that he had made a cash settlement with the Murphys and presented for the court's consideration a general release executed by them. He also assured the court that he would mend his ways and begin to discharge his professional duties in a responsible fashion. Persuaded by these representations and the monetary settlement, the court administered a private censure.

When the respondent appeared before us in response to the Board's finding of neglect in the Bedards' case, he once again sought something less than public sanction. However, the Bedards' plight is a manifestation of the respondent's continued inattention to the needs of his clients, and the time has come when this court's primary duty is to fulfill its obligation to the public.

Consequently, it is hereby ordered and directed that the respondent, Anthony S. DelGiudice, shall be and is hereby indefinitely suspended from the practice of law before the courts of this state. The respondent is further ordered to comply with the provisions of our Rule 42–15(a) and (b) and furnish to the Clerk of this Court on or before May 12, 1980, the names and addresses of any and all clients presently being represented by him.

BEVILACQUA, C. J., did not participate.