[No. C.D. 6396. En Banc. May 21, 1981.]

*In the Matter of the Disciplinary Proceeding
Against* MARY FUNG KOEHLER, *an
Attorney at Law.*

*Robert T. Farrell,* for Bar Association.

*Helsell, Fetterman, Martin, Todd & Hokanson,* by *William A. Helsell,* for respondent.

BRACHTENBACH, C.J.—This attorney disciplinary matter, involving failure to render accountings and remit funds, originated in three separate client complaints to the Bar

Association. These complaints led to six counts alleging violation of the Discipline Rules for Attorneys (DRA); three counts involved the substantive client complaints and three related to an initial lack of cooperation with the Bar's investigation. The proceedings do not involve any misuse of clients' funds. Respondent's competency and integrity are not in question.

The hearing officer found that respondent did not respond in a timely manner to Bar requests for information regarding the complaints and that more timely responses to her clients and to the Bar investigators would have avoided these proceedings. The hearing officer concluded that the three counts based on her failure to promptly respond should be dismissed on condition that respondent pay the Bar's costs, with the admonishment that inquiries of the Bar regarding complaints must be answered immediately. Respondent's brief does not challenge that disposition; but we agree with it as being appropriate.

On one of the substantive complaints the hearing officer recommended an admonishment that an attorney is required to provide periodic accountings to a client indicating accrual of time and charges for legal services, credits for payments and a statement of balances. The hearing officer concluded that the respondent should be deemed to have waived her claim for balances indicated by her billing submitted more than 2 years after the client's last payment on account. We agree with that disposition.

For the other two substantive complaints, the hearing officer concluded that respondent's conduct violated (CPR) DR 9–102(B)(4); he recommended a single letter of reprimand on the condition that respondent periodically provide review of her accounting system to assure that time slips, charges, and costs expended for clients are recorded regularly and systematically and that periodic statements are produced to clients according to the Washington State Bar Association Trust Account Guidelines.

While not objecting to the thrust of the hearing officer's recommendation, Bar counsel questioned whether a repri-

mand could be so conditioned. The Disciplinary Board, adopting the findings and conclusions of the hearing officer, responded to Bar counsel's concern by substituting for the reprimand a 60–day suspension from the practice of law; provided that that suspension shall be stayed and suspended pursuant to DRA 5.6(i) for a period of 2 years upon conditions identical to those suggested by the hearing officer.

Four of the board members voted for the board order. A fifth member voted for suspension and felt that the repeated violations warranted a 1–year suspension. Two members dissented on the basis that the circumstances did not justify conditional suspension since they did not suggest a lack of fitness or moral turpitude.

The respondent refused to stipulate to the stay and its conditions. Therefore, the proposed stay became null and void and the matter was transmitted to this court, pursuant to DRA 5.6(i)(1). We concur in the recommendation of the Board and order a 60–day suspension from the practice of law provided that that suspension shall be stayed and suspended pursuant to DRA 5.6(i) for a period of 2 years from its beginning date upon the following terms and conditions: that respondent Koehler periodically provide review of her accounting system to assure that time slips, charges, and costs expended for clients are being regularly and systematically recorded and periodic statements are produced to clients according to the Washington State Bar Association Trust Account Guidelines.

To summarize, the three incidents leading to client complaints involve similar conduct. In one case the respondent represented some heirs in a probate estate. She received the heirs' funds from the estate about April 1, 1978. She made partial distribution on May 26, 1978. She held an additional $1,327 in her trust account until April 27, 1979, more than a year after the funds were received. Respondent was advised in November of 1978 that one of the heirs had filed a complaint with the Bar. She did not respond thereto until receipt of a second Bar inquiry in March of 1979.

In the second matter, in December 1977 respondent received $21,565 on a judgment in a personal injury action. An immediate disbursement of $12,000 to her client and $7,188 for her fee was made on December 16, 1977. The balance of $2,377 was to be used to pay the cost of litigation and to satisfy the subrogated interest of her client's insurance company, with the balance belonging to the client. While there was some question about the amount of the subrogator's interest, it was not until July 1978 that respondent disbursed the balance to the client, after the latter had retained another attorney to collect the remaining funds.

In the third instance, respondent concluded a dissolution action in March 1976, at that time orally telling the client that the fee was approximately $1,000 plus costs. No billing statement for fees or costs was rendered until April 26, 1979, over 3 years after the services were performed and over 8 months after written notice by the Bar of the complaint.

Thus in the estate matter there was a delay of approximately 1 year in any accounting and payment of funds remaining after a partial disbursement. In the litigation instance the full account and final disbursement was not made for approximately 6 months. In the dissolution case respondent waited 3 years before rendering a written bill and accounting for partial payments received. In each instance the respondent did not promptly answer the inquiries of the Bar Association.

Respondent flatly contends, in her statement in opposition to the findings, conclusions and recommendations of the hearing officer, that her conduct did not constitute a violation of (CPR) DR 9–102(B)(4). That statement in contention was prepared and signed by respondent, not her attorney. Her attorney argues that a reprimand is warranted and sufficient.

Respondent mainly excuses her dilatory accounts, disbursements and responses to the Bar, after client complaints, by the fact that she was in temporary offices while

remodeling her permanent office and that a fire at the temporary office severely disrupted her practice, requiring additional moves. Of course, except for the fire her moves were voluntary. In any event even the fire does not justify these long delays in accounting and responding to the Bar inquiries. Prompt responses to the Bar Association and timely advice to the clients of the difficulties caused by the fire could well have avoided these problems.

The fire occurred June 28, 1978. At that point respondent had held the litigation funds for 6 months without accounting or disbursement. On that day she had held the balance of the estate funds for a month after partial distribution, without accounting or disbursement. After the fire she continued to hold these funds for 10 months without accounting or disbursement. The inquiry from the Bar, after client complaint, occurred 4 months after the fire and respondent did not respond to the Bar for another 5 months and then only after a second inquiry.

 Quite apart from the disorder and disruption necessarily resulting from the office fire, it is evident that respondent did not maintain adequate records. Her pegboard timekeeping system was not regularly and systematically posted. This necessitated resort to client files, telephone charges, and notes from memory to reconstruct time charges. Disbursements on behalf of clients were not regularly and systematically entered on individual client ledger sheets. Respondent's positive obligation to comply with (CPR) DR 9–102 and DRA 2.6 is not excused by the inadequate maintenance of her records. The rules require complete records of client funds, appropriate accountings and prompt payment to the client. (CPR) DR 9–102(B). When a lawyer wishes to deduct the attorney fees from those client funds, the lawyer cannot justify inordinate delay and violation of (CPR) DR 9–102(B) by the inadequacy of timekeeping and accounting records or procedures.

As noted above, respondent attorney in her statement of objections contended that there was no violation of disciplinary rules. Taking a different tack in her brief, she

argues that since no moral turpitude was involved suspension is too harsh a penalty and that only a reprimand should be imposed.

Respondent is correct that suspension has been imposed in instances where more compelling facts were present. *In re Yates,* 78 Wn.2d 243, 473 P.2d 402 (1970); *In re Talbot,* 78 Wn.2d 295, 474 P.2d 88 (1970); *In re Loomos,* 90 Wn.2d 98, 579 P.2d 350 (1978).

However, *In re Vandercook,* 78 Wn.2d 301, 304, 474 P.2d 106 (1970) explicitly stated the views of this court concerning delay:

> [C]ontinuing and protracted delay and procrastination in the performance of a lawyer's services and discharge of his duties, whether it be in advancing a cause in the courts or *handling his affairs in the office, even if done without moral turpitude,* do in one degree or another amount to a course of conduct which demonstrates, for the time being at least, a qualified lack of fitness to practice law.

(Italics ours.)

Other courts have suspended for delay and neglect not involving moral turpitude. *Florida Bar v. Collier,* 385 So. 2d 95 (Fla. 1980); *State Bar Grievance Adm'r v. Albert,* 390 Mich. 234, 212 N.W.2d 17 (1973); *Carter v. DelGiudice,* 414 A.2d 779 (R.I. 1980). Again the harm to clients may have been more substantial in those cases, but it is clear that moral turpitude is not a condition precedent to the sanction of suspension. Also distinguishing our own cases and those of other states is the fact that the suspension here imposed is conditionally suspended.

Several factors contribute to our decision. The conduct was not a single isolated incident. Rather it stems from an apparent lack of attention to routine and systematic compliance with an important professional obligation. The neglect extended over a period of months and continued even after complaint to the Bar and notice to the respondent. Respondent compounded the matter by not promptly resolving the problems by expeditious responses to the cli-

ents and the Bar.

Respondent further argues that the condition imposed grants unlimited discretion to an unnamed person to determine compliance with that condition, and that she may be further suspended for a minor flaw or mistake in her record keeping. There are several answers to her concern. First, the condition is specific. If she has any question as to what is required, the Trust Account Guidelines provide 16 primary standards with 10 additional subparagraphs. If doubts still arise respondent may seek advice from Bar counsel from whom we would expect cooperation and good faith assistance to aid respondent. Second, respondent is protected by the good cause and notice requirements of DRA 5.6(j).

A statement of cost and expenses was not made a part of the record as required by DRA 7.1(d). The briefs are silent on the matter and we express no opinion thereon. The Bar has filed no statement of additional expenses in this court, DRA 7.2(a), so no award is made.

Respondent has filed a statement of cost and expenses, including not only charges by her counsel, but a charge of $9,600 for her own services. It was filed more than 10 days after hearing without proof of service on the Bar. No exceptions were filed by the Bar. DRA 7.2(b). In any event, in view of our disposition, no award would be made to respondent.

Respondent is suspended from the practice of law for 60 days from the date of filing of this opinion; provided, that suspension shall be stayed and suspended pursuant to DRA 5.6(i) for a period of 2 years from the effective date hereof upon condition that respondent periodically provide review of her accounting system to assure that time slips, charges and costs expended for clients are being regularly and systematically recorded and periodic statements are produced to clients.

ROSELLINI, STAFFORD, UTTER, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

DORE, J. (dissenting)—I believe that a reprimand would have been a fair and proper disposition of this disciplinary matter.

After an extensive hearing in the Koehler matter, the hearing officer concluded:

> 2. Koehler's failure to account for and distribute funds as charged by the Bar Association in Counts I and III of the Bar Association complaint constitute violations of DR 9–102(b)(4). Under the circumstances, these matters should be disposed of by a *single letter of reprimand* on condition that Koehler periodically provide review of her accounting system to assure that the time slips, charges, and costs expended for clients are being regularly and systematically recorded and that periodic statements are produced to clients as required by Washington State Bar Association Trust Account Guidelines.

(Italics mine.)

Subsequently, Bar counsel questioned legality of attaching conditions to a *reprimand,* contending that under the rules the Board lacked jurisdiction to attach any conditions to a reprimand disposition of a disciplinary matter.

Accordingly the Board issued its order for a 60–day suspension, suspended, conditioned on the following:

> [T]hat [respondent] Koehler periodically provide review of her accounting system to assure that time slips, charges, and costs expended for clients are being regularly and systematically recorded and periodic statements are produced to clients as required by Washington State Bar Association Trust Account Guidelines.

Hearing officer John W. Riley, also functioning as a board member, filed a strong dissent in which Patrick A. Shelledy joined.

The Board seemed to indicate that if they had the authority to attach a condition to a reprimand they would have done so. By finding Koehler guilty on counts 1 and 3 and issuing a reprimand as recommended by the hearing officer, the Board could have recommended suspension later in the event of a censure or reprimand caused by the violation of the State Bar Association Trust Account

Guidelines, or any other violation no matter how slight. Apparently the Board overlooked Discipline Rules for Attorneys 10.1[1] which provides for a license suspension in the event of three or more censures and/or reprimands or a combination of a suspension and reprimand. As Koehler already had one censure prior to the subject case, her license could be suspended in the event of a third violation.

Other than disbarment, suspension of a lawyer's license is the most disastrous thing that can happen to an attorney. The Board should not hesitate to request this court to suspend an attorney's license on the proper factual presentation. However, this power should be used with great restraint, fairness and uniformity. The Board in its order adopted the findings of the hearing officer in their entirety. Pertinent findings were:

> 3. The respondent is a capable attorney and has developed a thriving practice in King County. She enjoys a good reputation with respect to integrity and is recognized as a competent attorney by her peers.

> . . .

> 5. The legal services rendered by the respondent attorney to the complainants O'Neill, Anderson and Barnhart were competent and were rendered in a timely manner. The accountings eventually supplied by the respondent to the complainants were complete and accurate and the fees charged were reasonable. There was no misuse of client funds nor any other inferential question concerning respondent's integrity.

> . . .

> 9.2 Respondent's failure to submit the requested information to Bar Counsel in a more timely manner was a function of office pressures, overscheduling and manage-

---

[1] "RULE 10.1
"CRITERIA

"An attorney disciplined after the effective date of this rule who has a record of:

"(a) Three or more censures and/or reprimands; or

"(b) Any combination of a suspension or disbarment plus one or more censures or reprimands shall be subject to suspension from the practice of law. For purposes of this rule, a suspension of further proceedings pursuant to Rule 5.6(i) shall be deemed to be the equivalent of a reprimand."

ment conflicts and personal embarrassment. Complete disclosure and full cooperation was eventually provided in each case.

. . .

10. During calendar year 1978 a series of unfortunate events occurred which account for some of the time taken by Koehler to submit accountings to the complainants and to respond to Bar Counsel. These events include frequent changes of personnel, both lawyer and non-lawyer, and three successive office moves the last of which was occasioned by an office fire.

11. Koehler's demeanor and attitude evidence remorse and an intention to avoid any similar delays in accountings to clients in the future. She has completed construction of a new office facility, has improved her office staffing arrangement and is modernizing her accounting and timekeeping system. There is little likelihood of similar occurrences in the future.

After adopting such findings, I am at a loss as to how the Board and the majority of this court conclude that Koehler's conduct is so serious that she should have her license suspended.

## CONCLUSION

I agree with the Board's dissent that this record does not appear to justify imposition of a sanction as serious as conditional suspension because (1) the respondent implemented proceedings to avoid future instances of the same kind, (2) the nature of these instances does not suggest lack of fitness or any issue of moral turpitude. A reprimand would have been adequate.

DIMMICK, J., concurs with DORE, J.