[No. C.D. 5965. En Banc. August 5, 1982.]

*In the Matter of the Disciplinary Proceeding*
*Against* BRIAN B. KENNEDY, *an*
*Attorney at Law.*

*Robert T. Farrell* and *Caroline D. Davis,* for Bar Association.

*Powell & Harnetiaux,* by *William J. Powell,* for respondent.

Utter, J.—This is an attorney discipline case presenting the question of the appropriate discipline for an attorney who violated various disciplinary rules stemming from acts of deceit, neglect, and unpreparedness, as well as failure to pursue and prejudicing the interests of a client. We adopt the Bar Association Disciplinary Board's recommendation of a 60–day suspension.

This disciplinary action arose from Mr. Kennedy's failure to represent the defendant's insurer in the personal injury case of *Graves v. P.J. Taggares Co.,* 94 Wn.2d 298, 616 P.2d 1223 (1980). He was unprepared for and was not present in court when the plaintiff argued a motion for summary judgment. The motion was later granted, but Mr. Kennedy failed to notify his client of that fact although it was conclusive on the issue of liability. Mr. Kennedy then sought a continuance of the trial of the case because he was again unprepared. A continuance was granted and in return Mr. Kennedy entered a stipulation severely limiting what he could present on his client's behalf at the trial. None of these acts or agreements was conveyed by Mr. Kennedy to his client. Plaintiff won the trial and obtained a judgment of $131,200. Mr. Kennedy told his client after the trial was over that Kennedy would pursue a summary judgment and that no trial date had been set. Mr. Kennedy's client only learned of the judgment at the time garnishment proceed-

ings were begun.

The bar association filed a complaint against Mr. Kennedy on February 9, 1981. After some delay, a hearing was held on September 30, 1981. In the hearing panel officer's findings, conclusions and recommendations filed on October 16, 1981, she found Mr. Kennedy had violated CPR DR 1–102(A)(4), a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; CPR DR 6–101(A)(3), a lawyer shall not neglect a legal matter entrusted to him; CPR DR 6–101(A)(2), a lawyer shall not handle a legal matter without preparation adequate in the circumstances; CPR DR 7–101(A)(1), a lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available means permitted by law and the discipline rules; and CPR DR 7–101(A)(3), a lawyer shall not intentionally prejudice or damage his client during the course of his professional relationship.

She recommended a 30–day suspension to be suspended for 1 year pursuant to DRA 5.6(i). On November 20, 1981, a unanimous Disciplinary Board adopted the hearing panel officer's findings, and conclusions but modified the recommended discipline to provide for a 60–day suspension from the practice of law. It affirmed the hearing panel officer's assessment of costs to Mr. Kennedy. The Board's recommendation has been forwarded to us pursuant to DRA 5.6(h).

Mr. Kennedy argues we should reinstate the hearing officer's recommendation and that the Board's substitution of its own recommendation was without reason. The Board did not state its reasons, but unfortunately our rule, DRA 5.6(a), does not require it to articulate reasons for its recommendation. Failure to require reasons is inconsistent with the kind of process we have required in quasi–judicial forums, *see Parkridge v. Seattle,* 89 Wn.2d 454, 464, 573 P.2d 359 (1978). Fortunately, the proposed revisions of the Discipline Rules for Attorneys require the Board to articulate reasons for its recommendation. Proposed rule for lawyer discipline 6.7(e) states:

> If the Board amends, modifies, or reverses any finding, conclusion or recommendation of the hearing officer or panel, the order of the Board shall set forth the reasons for its decision.

Notwithstanding the Board's failure to explain why it disagreed with the hearing officer's recommendation, we can ascertain reasons for such disagreement based on the hearing officer's findings.

■■ The bar association argues the purposes of attorney discipline are served by imposing a 60–day suspension on Mr. Kennedy. We discussed those purposes in *In re Zderic*, 92 Wn.2d 777, 787, 600 P.2d 1297 (1979):

> The two basic purposes of attorney discipline are [1] to protect the public from future misconduct of an attorney and [2] to preserve public confidence in the legal system.
>
> In an individual case, however, recitation of disciplinary purposes does not resolve the issue of appropriate discipline, which must be determined by the facts and circumstances of each case. This court has reiterated several considerations in making this determination: (1) the seriousness and circumstances of the offense; (2) avoidance of repetition; (3) deterrent effect upon others; (4) maintaining respect for the legal profession; (5) assurance that those who seek legal services will be insulated from unprofessional conduct.

(Citation omitted.)

■■ Mr. Kennedy's wrong was serious and the court acknowledged his misbehavior in *Graves v. P.J. Taggares Co., supra.* While discipline must be tailored to each case, *In re Kumbera*, 91 Wn.2d 401, 404, 588 P.2d 1167 (1979), we have imposed suspension for similar time periods in cases of neglect after previous reprimand. *In re Johnson*, 94 Wn.2d 659, 618 P.2d 1322 (1980); *In re Loomos*, 90 Wn.2d 98, 579 P.2d 350 (1978). While Kennedy's neglect involved only one case, his conduct extended well beyond the confines of neglect.

Mr. Kennedy regrets his conduct and the record shows there is little chance of further misconduct. As a practicing attorney, Mr. Kennedy's current conduct would appear flawless. He has practiced 4 years since the incident and has

retained the confidence of his clients. Suspension is not required to insulate Mr. Kennedy from his present or prospective clients. Nonetheless, as a function of preserving public confidence, punishment of an attorney is sometimes necessary to deter others and to indicate our legal system's intolerance of conduct such as that once exhibited by Mr. Kennedy. *See In re Rosellini*, 97 Wn.2d 373, 381, 646 P.2d 122 (1982) (Dolliver, J., dissenting). While Mr. Kennedy is rehabilitated, the legal system itself has not been redeemed. It is not only Mr. Kennedy whose reputation has been tarnished; his actions have impugned us all. Furthermore, the suffering Mr. Kennedy has incurred as a result of his own conduct cannot be the measure of an .appropriate sanction. A 60–day suspension is reasonable. It will create some hardships, as it properly should.

Finally, Mr. Kennedy cites various mitigating factors, such as a case overload and his client's failure to be injured (since ultimate resolution of liability was similar to the original judgment against the insurer), which justify reinstatement of the hearing officer's recommendation.

 None of these mitigating factors undermines the validity of the Board's recommendation, and should not in fact be thought of as mitigating. A case overload is a matter of personal control and not a defense. No judgment is good judgment if it lacks the knowledge and approval of one's client.

We are confident Mr. Kennedy is a capable attorney who has learned from his past misconduct and who will continue his practice responsibly. Nonetheless, a 60–day suspension is not unfair in light of his misconduct. The Board's recommended discipline is hereby adopted and costs are assessed to Mr. Kennedy.

BRACHTENBACH, C.J., ROSELLINI, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and McCREA, J. Pro Tem., concur.

724

STAFFORD, J. (concurring)—I agree with everything that has been said by the majority with one exception. I do not feel the discipline is adequate for the misconduct involved. In my opinion 60 days will have neither an adequate deterrent effect on other lawyers nor restore public confidence in the bar and the judicial system. I would suspend respondent for no less than 6 months.