[No. C.D. 329.    En Banc.    September 3, 1970.]

*In the Matter of the Disciplinary Proceeding Against M. W. VANDERCOOK, an Attorney at Law.**

*Robert O. Wells, Jr.,* for Board of Governors.

HALE, J.—The Board of Governors of the Washington State Bar Association filed a formal 1-item disciplinary complaint (Discipline Rules for Attorneys 3.1, RCW vol. 0), charging attorney M. W. Vandercook with inexcusable neglect and delay in the handling of a divorce action. Hearings were held in accordance with DRA 3.2 before a panel consisting of Brooks K. Johnson, Chairman, Howard P. Pruzan and John W. Ellis, members of the bar of this court. Our review of the record shows that the evidence amply supports the findings of fact and conclusions entered by the hearing panel.

M. W. Vandercook was admitted to the bar October 23, 1920, by the Supreme Court of the State of Washington. The events relating to this proceeding occurred during his practice of law in Seattle and King County where he maintained his law office. In June, 1966, Mr. Edson Case, an attorney in Puyallup, brought a divorce action for a Mrs. Nancy Branch. Mrs. Branch's husband appeared by counsel, and at a show cause hearing in the King County Superior Court an order was entered directing the husband to pay certain sums for her support and attorney's fees, the order being prepared and presented to the court by the husband's counsel.

Mr. Case and Mr. Vandercook knew each other from law school days and Mr. Vandercook had handled a few matters

*Reported in 474 P.2d 106.

for Mr. Case on earlier occasions. Mr. Case, intending to withdraw from the practice of law, during October, 1966, arranged with Mr. Vandercook to take over two of his matters, one being the Branch divorce case.

During the fall of 1966, Mrs. Branch, thinking that they were to go to court to obtain a divorce decree, met Mr. Case at the King County courthouse. Instead, she was taken to Mr. Vandercook's office. There she was informed that Mr. Case was retiring from practice and that her case would be turned over to Mr. Vandercook. During the discussion, she agreed that Mr. Vandercook would succeed Mr. Case as her attorney. She was not at the time asked to pay Mr. Vandercook any money for his services as counsel.

Mrs. Branch heard nothing from Mr. Vandercook for some time so in June, 1967, more than 6 months after he had taken over her case, she began telephoning him for information about it. He gave her no explanation for the delay or inaction, but she continued calling him by telephone and on many occasions went to his office. In his earlier explanations, Mr. Vandercook told her that he had been busy, that he would get to the matter shortly, and that he would call her. Then, in response to her persistent entreaties, he changed his explanation of the delay, telling her that legal difficulties had arisen; that it was necessary to locate her husband; and that it might be necessary to start a new action. Mr. Vandercook did not explain to his client the true situation—that her divorce action had been dismissed for want of prosecution.

In August, 1967, nearly a year after he had succeeded Mr. Case, Mrs. Branch paid Mr. Vandercook $200 in attorney's fees, informing him that she wished to remarry. She reminded him that she had an infant child to support and, in the meanwhile and at considerable inconvenience to all of them, she had been living with her parents. She contacted Mr. Vandercook repeatedly thereafter and received no explanation for the delay from him nor a promise of action.

Mr. Vandercook had not entered his appearance of record in the Branch divorce file and, therefore, did not receive

the superior court clerk's notice of a motion to dismiss the case for want of prosecution. Little or nothing was done by Mr. Vandercook except to make two or three telephone calls trying to locate Mr. Branch. Mr. Branch called him once to find out why Mr. Vandercook was seeking him and on learning that the latter wanted to discuss the divorce, told Mr. Vandercook that there was no case and hung up. Because of this remark, Mr. Vandercook some days later for the first time looked at the clerk's file only to discover that an order of dismissal for want of prosecution had been previously entered at the instance of the King County Clerk. At no time did Mr. Vandercook attempt to have the order of dismissal vacated, or ever take any action to obtain the entry of a decree of divorce despite the continuous insistence of his client.

After that, in early 1969, Mrs. Branch engaged another attorney, paid him $75 and he, acting as her counsel, had the order of dismissal vacated and a divorce decree entered February 19, 1969. Mr. Vandercook did not offer to refund the $200 fee to Mrs. Branch, but at the disciplinary hearing said he would do so if the panel considered it appropriate.

The hearing panel considered a record showing three prior disciplinary actions relating to Mr. Vandercook. In 1948, he had received a reprimand from the Washington State Bar Association because of delay and procrastination in handling a probate estate; in 1959, he had received another reprimand for delay and procrastination in the probate of an estate; and in 1962, he was again reprimanded because of delay and carelessness and failure to make a timely accounting in handling a real-estate transaction.

The panel explicitly found that Mr. Vandercook's conduct in representing Mrs. Branch did not in any way involve moral turpitude, but that he nevertheless had violated his oath and breached his duties as an attorney and Canon of Professional Ethics 21, RCW vol. 0, which requires punctuality, promptness and reasonable speed in the handling of a client's affairs. The trial panel recommended 30-days' suspension from practice and the Board of Governors approved its findings, conclusions and recommendation

and adopted them as its own. The record has been sent here in accordance with DRA 5.6 (f).

■ A lawyer owes "entire devotion to the interest of the client." CPE 15. He should, with reasonable dispatch and industry, employ all honorable means available within the law and the ethics of the profession to advance his client's interest and protect his client's rights. An attorney owes a duty of punctuality—not only to the courts and public but to his client. CPE 21. Procrastination and delay in handling of legal affairs not only induces a client to lose confidence in his attorney but reflects badly on the profession and the courts, and may foster an impression in the public mind that the highly-vaunted standards of professional ethics are no more than a sham. Accordingly, continuing and protracted delay and procrastination in the performance of a lawyer's services and discharge of his duties, whether it be in advancing a cause in the courts or handling his affairs in the office, even if done without moral turpitude, do in one degree or another amount to a course of conduct which demonstrates, for the time being at least, a qualified lack of fitness to practice law. DRA 1.1(m). *In re Pennington,* 73 Wn.2d 601, 440 P.2d 175 (1968). The attorney's procrastination, delay and inaction here constituted a course of professional conduct running directly counter to the admonition of CPE 21 which admonishes, *inter alia,* that an attorney must be punctual in his dealings with his client.

Both before and after he had received the $200 fee, Mr. Vandercook's services to his client were negligible. Beyond a few telephone calls, we find little in the record to suggest that he did anything at all for her. Actually, her cause would have been better off had she not employed him, for in such event, so urgent was her need for judicial relief, she would probably have engaged another attorney in time to prevent her case from being dismissed for want of prosecution. When returned to her control, her case was in worse condition than when she paid the $200 fee. Under CPE 44, had the attorney withdrawn from the case after accepting a retainer, he would have been obliged to "refund such part

of the retainer as [had] not been clearly earned." Whatever services Mr. Vandercook rendered his client were, we think, encompassed by the rule de minimus and the hearing panel should have accepted the offer to reimburse the client.

When considered in connection with the three prior official reprimands, the recommendation of the Board of Governors and that of the trial panel that Mr. Vandercook be suspended from practice for 30 days is appropriate to the circumstances of the attorney and the breach of professional ethics shown by the record. Accordingly, respondent attorney is suspended from practice for a period of 30 days. His reinstatement shall not be accomplished until he has shown satisfactory proof of reimbursement to Mrs. Branch of the $200 fee, and has paid the costs of this proceeding as taxed according to the cost bill of the Washington State Bar Association in the amount of $147.

HUNTER, C. J., FINLEY, NEILL, and McGOVERN, JJ., concur.

HAMILTON, J. (concurring)—I concur in the suspension but not in the length thereof. For the reasons stated in my concurrence in *In re Talbot,* 78 Wn.2d 295, 474 P.2d 88 (1970), I would impose a suspension of 45 days in keeping with the disposition in *In re Yates,* 78 Wn.2d 243, 473 P.2d 402 (1970).

ROSELLINI and STAFFORD, JJ., and DONWORTH, J. Pro Tem., concur with HAMILTON, J.