In the Matter of BERNARD K. TRASK, Attorney at Law

No. 5221

September 28, 1971

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

*PER CURIAM.* Disciplinary proceedings against Bernard K. Trask hereinafter referred to as respondent, were initiated with the filing of charges with the Commission on Unprofessional Conduct and Unauthorized Practice of Law by three individual complainants: Mrs. Susanna Gluckler (Case No. 33), Mr. Fortunato Cansana (Case No. 36) and Mr. Manuel Marques (Case No. 37). Pursuant to Rule 16(c)(4) of the Rules of the Supreme Court, the chairman of the Commission appointed a Committee on Inquiry to conduct investigations into the charges of unethical conduct by respondent. On September 8, 1968, the Committee on Inquiry filed reports on cases 36 and 37 with the Commission, recommending that hearings be held. On October 21, 1968, the Committee on Inquiry filed a report on case 33, also recommending that hearings be held. Pursuant to these reports filed by the Committee on Inquiry, complaints for cases 33, 36 and 37 were issued and duly served upon respondent. Hearings were held on February 12, 1969 on Case No. 33, and on November 12, 1969 for Cases Nos. 36 and 37.

Subsequent to these hearings, the Commission filed with the Supreme Court on April 14, 1971, reports containing findings of fact, conclusions and recommendations concerning respondent's conduct. A certified copy of the Report of the Commission was served on the respondent personally on April 14, 1971. The respondent did not file within twenty days from the date of service any exceptions to the Report which he was entitled to make, pursuant to paragraph 16 of Rule 16 of the rules of this court.

The material facts in Case No. 33 are undisputed. Respondent, a member of the bar of the State of Hawaii, admitted to practice before all the courts in the state, was retained by Mrs. Gluckler on or about April 22, 1968, to obtain an annulment of marriage for complainant. The following day, Mrs. Gluckler tendered to respondent a diamond ring valued at $500 as full payment for court costs, service fees and respondent's professional services. Respondent informed the complainant that he would call her as soon as he was ready. When respondent failed to contact the complainant, the latter, eight to fourteen days later, attempted to speak with respondent. During the period between April 22 and June 28, complainant made numerous telephone calls to respondent, leaving messages for him to return her calls as respondent was never in his office. None of the messages was answered by respondent.

On two occasions, Mrs. Gluckler found respondent in areas outside his office. On each occasion respondent arranged appointments to meet with complainant at his office at a specified date and hour. Complainant went to respondent's office at each appointed time, but in both instances respondent failed to show up for the meetings. On one of these instances at some unspecified time between April 25 and June 15, complainant waited for respondent about two hours after the specified hour of the appointment.

On July 1, 1968, Mrs. Gluckler sent to respondent a letter by certified mail. The letter was never picked up by respondent and was returned to complainant on or about July 29, 1968.

Mrs. Gluckler's complaint for annulment was never filed by respondent because the latter did not prepare the requisite motion, affidavit and order for service of summons by registered mail or by publication on Mr. Gluckler who was not a resident of the State of Hawaii. Despite his failure to perfect the initial pleading so that it could be filed in court, respondent did not return any part of the fee represented by the diamond ring tendered by complainant to respondent

and sold by respondent at its appraised value of $500.

The Commission concluded that respondent violated Canons 21 and 29 for failure without good reason to render professional services with reasonable diligence and promptness after accepting payment in full for such professional services, and for failure to refund promptly the unearned portion of the fee and unused court costs and service fees to the client when termination of the employment prior to completion of the services became inevitable.

Respondent's conduct in Case No. 36 is similar to that in Case No. 33. Fortunato Cansana was incarcerated serving out a term of six months in April 1968 when the Board of Parole and Pardons submitted to the Governor a recommendation to commute the sentence.

In early May, 1968, Mr. Cansana retained respondent to help expedite the signing of the commutation papers. After accepting the assignment, respondent indicated that he should have the papers signed within two or three weeks. Complainant then paid respondent $110 or $115 by check as partial payment of a fee of "about $300.00." Subsequently, Mr. Cansana paid respondent $50 in cash. While incarcerated, Mr. Cansana frequently telephoned respondent but was unable to contact him; and respondent failed to return the telephone calls.

Respondent admitted that he had agreed to represent Mr. Cansana to expedite signing of the commutation papers and that he had received such payments to render professional services. He claims, however, that he satisfied his duty to complainant as he made three visits to Oahu Prison, where Mr. Cansana was incarcerated, to review complainant's record and to confer on the Cansana case with Mr. Arthur Hoke, Secretary of the Board of Parole and Pardons. However, a letter dated January 16, 1970, from the Acting Parole and Pardons Administrator indicated that the records of the Board "do not show that he (respondent) exerted any influence or consulted with any member of the Board or its staff on this matter." A letter dated Jan-

uary 19, 1970 from Mr. Ed Rohrbough, administrative assistant to the Governor, states there was no correspondence between the Governor's office and respondent on the Cansana matter. In addition, there is no appointment with respondent noted on the Governor's calendar for the months of May, June and July, 1968.

Respondent has not returned any part of the fee paid by complainant.

The Commission concluded that the respondent violated Canons 12, 21 and 29 for failing to petition the Governor to commute the sentence of the complainant and for failing to return to complainant the money paid to respondent as fees for such services.

On or about May 4, 1968, the respondent agreed to represent complainant Manuel Marques to take an appeal on behalf of complainant from a judgment of conviction rendered by a district magistrate of the District Court of Honolulu. Complainant paid respondent $50 on May 4, 1968, and an additional sum of $200 on May 6, 1968, for court costs, service fee and professional services.

Respondent negligently failed to take all requisite steps to perfect and take the appeal on behalf of the complainant. Consequently, the district court's judgment of conviction became final. In addition, respondent failed to inform Mr. Marques that the appeal had not been perfected and taken and failed to reimburse complainant the money paid for the purpose of taking the appeal.

Mr. Marques was unable to contact respondent after May 6, 1968. He went to respondent's office in person on at least four different occasions and was told each time that respondent was in court. Complainant telephoned respondent's office at least twenty times but was unable to contact respondent. Respondent did not return any telephone calls.

The Commission concluded that respondent's conduct in Case No. 37 constituted violation of Canons 12, 21 and 29.

Discernible throughout these three cases are two distinct patterns of respondent's conduct which we find to be in vio-

lation of the Canons of Professional Ethics: (A) Respondent's acceptance of employment, receipt of payment in full or in part for professional services, and subsequent failure to perform his duties under the agreement and failure to reimburse his clients for non-performance of such duties; (B) respondent's procrastination and delay in disposing of his client's causes to his client's detriment, failure to communicate with his clients and refusal to respond to their inquiries.

## A.

We find highly reprehensible respondent's practice of agreeing to render professional services, receiving payment for such services, then reneging in performance of his obligations under such agreements and failing to reimburse his clients for non-performance.

Although there is no provision in the Canons of Professional Ethics which specifically provides that an attorney is duty-bound to refund to his clients portions of unearned fees in the event of default by the attorney, there is no question that such conduct violates the canons of Professional Ethics. The absence of a provision of this nature clearly does not indicate that the subject conduct of the respondent is permissible. The absence of such a provision is explained by the preamble to the Canons of Professional Ethics which states:

> No code or set of rules can be framed, which will particularize all the duties of the lawyer in the varying phases of litigation or in all the relations of professional life. The following canons of ethics are adopted as a general guide, *but the enumeration of particular duties should not be construed as a denial of the existence of others equally imperative, though not specifically mentioned.* (Emphasis added).

The same construction of the Canons of Ethics was made by this court in *In re Trask*, 46 Haw. 404, 411 (1963) where this court stated that "to hold an attorney answerable for unprofessional conduct, it is not necessary that his offense be spe-

cifically spelled out in some particular provision in the code of ethics."

Canons 12 and 24 are instructive in resolving the propriety of respondent's conduct. Canon 12 states that "in fixing fees, lawyers should avoid charges which overestimate their advice . . . ." Further, some pertinent factors to be considered in determining the appropriate amount of the fee include:

> (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; . . . (4) the amount involved in the controversy and the benefits resulting to the client from the services.

Application of these guides to the facts of instant proceedings is helpful in determining the amount of compensation due to the attorney. The records show that the time and labor expended by respondent in the cases of Mrs. Gluckler and Mr. Marques were negligible and on Mr. Cansana's case non-existent. In addition, no benefits accrued to said complainants. In fact, all of the clients relied on respondent to their detriment.

Canon 44 states: "Upon withdrawing from a case, after a retainer has been paid, the attorney should refund such part of the retainer as has not been clearly earned." Respondent did not withdraw from employment in the present cases. However, Canon 44 is premised on the proposition that an attorney must reimburse his client for "such part of the retainer as has not been clearly earned." The principle underlying this proposition is helpful in evaluating the conduct of the respondent.

That an attorney has a duty to refund unearned fees because of his failure to perform under a retainer agreement, was early established by this court. *In re Lyman,* 30 Haw. 405 (1928); *In re Keliikoa,* 5 Haw. 279 (1885); *In re Keliipio,* 6 Haw. 111 (1873); *In re Keawehunahala,* 6 Haw. 112 (1873); *In re Mahoe,* 3 Haw. 255 (1871). In each of these cases, this court held that it was a breach of profession-

al ethics for a lawyer to agree to represent a client, accept payment, render no or insignificant service to the client, then fail to reimburse him. Other jurisdictions in more recent decisions have found conduct essentially similar to that of respondent to be grossly unprofessional and violative of their respective codes of ethics. *In re Vandercook,* 474 P.2d 106 (Wash. 1970); *Simmons v. State Bar of California,* 87 Cal. Rptr. 368, 470 P.2d 352 (1970); *In re Haller,* 226 N.E. 2d 164 (Ind. 1967); *In re Garcia,* 89 Ariz. 155, 359 P.2d 499 (1961); *In re Williams,* 83 N.W.2d 115 (Minn. 1957); *Stephens v. State Bar of California,* 19 Cal. 2d 580, 122 P.2d 549 (1942); *In re Hall,* 58 Ariz. 67, 118 P.2d 67 (1941).

## B.

Respondent's failure to communicate with the complainant clients, refusal to respond to their inquiries, and his procrastination and delay in disposing of their cases violated Canon 21 which states:

> It is the duty of the lawyer not only to his client, but also to the courts and to the public to be punctual in attendance, and to be concise and direct in the trial and disposition of causes.

Each complainant repeatedly attempted to contact respondent by telephone calls to respondent's office and by making personal calls at respondent's office. The complainant clients left messages, but respondent failed to return any of these calls. Mrs. Gluckler sent respondent a certified letter which respondent refused to accept. In addition, when Mrs. Gluckler was able to arrange appointments with respondent on two occasions, the latter failed to show up for these meetings.

That respondent's failure to communicate with his clients, and refusal to respond to their inquiries is professionally unethical is unquestionable. *Simmons v. State Bar of California,* 87 Cal. Rptr. 368, 470 P.2d 352 (1970); *In re Garcia,* 89 Ariz. 155, 359 P.2d 499 (1961). Such misconduct operated to keep the clients uninformed as to the status of their

172

cases and thereby effectively prevented them from securing other counsel to prosecute their cases. As a result, Mr. Marques' conviction became final for failure to take an appeal; and Mr. Cansana was compelled to serve out additional time in prison which may not have been necessary if he had employed a reasonably competent and diligent attorney.

Respondent's procrastination and delay in disposing of his clients' cases clearly were detrimental to his clients. Canon 21 requires that an attorney act with reasonable punctuality and promptness in advancing his client's interest and protecting his rights. In *In re Vandercook*, 474 P.2d 106, 108 (Wash. 1970) it was stated:

> Procrastination and delay in handling of legal affairs not only induces a client to lose confidence in his attorney but reflects badly on the profession and the courts, and may foster an impression in the public mind that the highly-vaunted standards of professional ethics are no more than a sham. Accordingly, continuing and protracted delay in the performance of a lawyer's services and discharge of his duties, whether it be in advancing a cause in the courts or handling his affairs in the office, even if done without moral turpitude, do in one degree or another amount to a course of conduct which demonstrates, for the time being at least, a qualified lack of fitness to practice law.

*See also, Simmons v. State Bar of California, supra; In re Garcia, supra.*

Respondent's conduct in violation of the Canons of Professional Ethics deserves stern condemnation. For members of the bar are officers of the court and ministers of the law who are trusted by the community with the care of their lives, liberty and property. Charged with this fiduciary trust, attorneys are bound to adhere to a high standard of care and to perform important fiduciary responsibilities that other members of the community do not share. "In no other calling should so strict an adherence to ethical and moral obligations be exacted, or so high a degree of ac-

countability be enforced." *People v. Keegan*, 18 Colo. 237, 239 (1893) cited by this court in *In re Lyman*, 30 Haw. 405, 426 (1928). Breach of this duty demands firm action by this court. When the breach is accomplished in flagrant disregard of the liberty and interests of not only one but three individual clients, as was done by respondent, such intolerable conduct deserves censure by this court. In ordering discipline it is our aim and duty to protect the community against further misdeeds in violation of professional integrity by the respondent and to restore to respondent's clients fees improperly retained by respondent. In addition, it is our responsibility to maintain the honor of the legal profession by erasing any notion in the community that respondent's conduct is standard operating procedure in the profession. Finally, we intend that such discipline represent guideposts which will serve to notify the legal profession that conduct exhibited by respondent is grossly unprofessional and will be dealt with harshly.

THEREFORE, IT IS ORDERED that Bernard K. Trask's privilege to practice law in this state is hereby suspended for six months; and

IT IS FURTHER ORDERED that Bernard K. Trask make and submit proof of restitution as follows:

Case No. 33: $500 to Mrs. Susanna Gluckler

Case No. 36: $175 to Mr. Fortunato Cansana

Case No. 37: $225 to Mr. Manuel Marques;

IT IS FURTHER ORDERED that if such restitution is not made and proof not submitted within the six months' suspension period, respondent's privilege to practice law be suspended until such time that restitution is made.