[No. C.D. 3853. En Banc. November 2, 1978.]

*In the Matter of the Disciplinary Proceeding Against* LESLIE M. YATES, *an Attorney at Law.*

*Christopher C. Pence,* for Bar Association.

*Earl E. Yates,* for respondent.

ROSELLINI, J.—In this disciplinary proceeding, a hearing panel found the respondent guilty on two counts of violations of (CPR) DR 6–101(A)(3) (neglect of legal matters entrusted to him), and (CPR) DR 7.101(A)(2) (intentional failure to carry out a contract of employment for professional services), and a violation of DRA 1.1(j) (failure to cooperate with state bar counsel in the investigation of complaints against him). It further found that he had demonstrated unfitness to practice law by reason of repeated violations of the Code of Professional Responsibility, resulting in a history of disciplinary actions, thus invoking the cumulative discipline provided in DRA 10.1. The panel recommended that the respondent be censured with respect to the first and third counts, that he be reprimanded with

respect to the second count, and that he be suspended from the practice of law for a period of 2 years with respect to the fourth count.

The findings, conclusions and recommendations were adopted by the disciplinary board of the Washington State Bar Association.

The record shows that, with respect to count one, a client engaged the respondent to clear the title to a piece of real property which was being sold under a contract then in default. A prospective purchaser had signed an earnest money agreement at the time. The respondent attempted, without success, to obtain a quit claim deed from the contract purchaser. He then advised the client that she would have to pay a retainer of $350 before he could commence foreclosure, and she paid him that amount. Eight months later, in spite of a number of inquiries from the client, he had taken no action in the matter. The client, who by that time had moved to Texas, came to Seattle and engaged another lawyer, who promptly secured a clear title to the property. It appears that the respondent did not offer to return the money advanced by this client.

With respect to the second count, the evidence was that in 1967 the respondent was engaged to pursue a damage claim arising out of an automobile accident. He contacted the insurer of the driver of the other vehicle involved and later drew a summons and complaint, but did not file them. The client wrote a number of letters during the ensuing years, asking about the status of his claim, which was a small one. He also made a number of telephone calls to the respondent, who led him to believe that the case was still pending, although it became barred by the statute of limitations in 1970. This was the state of affairs in 1977, when the complaint was filed.

With respect to count 3, the respondent at first advised the hearing committee that he was unable to locate any file on this matter. He later produced a copy of a letter written in 1969 advising the client that he did not regard his claim as worthy of pursuit and suggesting that he seek other

counsel if he wished to pursue it. The client denied ever receiving such a letter, and the record supports his testimony that the respondent, in subsequent telephone conversations, continued to lead him to believe that he had not abandoned the matter.

The record also shows that the respondent failed to reply to letters written to him by bar counsel with respect to these complaints, one of which was sent by certified mail. It became necessary to subpoena him for his deposition. Although a subpoena duces tecum was served, commanding him to bring to the deposition all documentation in his possession, he did not bring his file on the automobile accident claim; and when that was eventually produced, it appeared to be incomplete.

 Respondent does not question the propriety of the censure and reprimand recommended with respect to his conduct in these matters. In *In re Vandercook,* 78 Wn.2d 301, 304, 474 P.2d 106 (1970), we said:

> Procrastination and delay in handling of legal affairs not only induces a client to lose confidence in his attorney but reflects badly on the profession and the courts, and may foster an impression in the public mind that the highly–vaunted standards of professional ethics are not more than a sham. Accordingly, continuing and protracted delay and procrastination in the performance of a lawyer's services and discharge of his duties, whether it be in advancing a cause in the courts or handling his affairs in the office, even if done without moral turpitude, do in one degree or another amount to a course of conduct which demonstrates, for the time being at least, a qualified lack of fitness to practice law. DRA 1.1(m) [*see* DRA 1.1(k)]. *In re Pennington,* 73 Wn.2d 601, 440 P.2d 175 (1968).

Thus we have held that procrastination and delay, even though unaccompanied by conduct involving moral turpitude, may be serious enough to warrant suspension.

With respect to count 4, the disciplinary board has recommended that the respondent be suspended, concluding that the conduct involved in the first three counts and his

prior record of discipline together demonstrate unfitness to practice law, under DRA 1.1(k), and subject him to the cumulative discipline provisions of DRA 10.1, which became effective February 3, 1975. That rule provides:

An attorney disciplined after the effective date of this rule who has a record of:

(a) Three or more censures and/or reprimands; or

(b) Any combination of a suspension or disbarment plus one or more censures or reprimands shall be subject to suspension from the practice of law. For purposes of this rule, a suspension of further proceedings pursuant to Rule 5.6(i) shall be deemed to be the equivalent of a reprimand.

In December 1967, the respondent was reprimanded before the Board of Governors of the Washington State Bar Association for neglect and delay and for misrepresentations made to clients. He was suspended from the practice of law for 45 days in August 1970 for neglect of a legal matter. *In re Yates,* 78 Wn.2d 243, 473 P.2d 402 (1970). He is therefore subject to suspension under the rule. His counsel urges, however, that the rule should not apply to him, since his previous disciplinary proceedings occurred before the effective date of the act. Statutes are presumed to operate prospectively, he points out, citing *Baker v. Baker,* 80 Wn.2d 736, 498 P.2d 315 (1972), and suggests that the court should adopt the same principle in applying its rules.

We do not agree that to apply this rule in the respondent's case is to give it retrospective operation. The rule is simply a codification of the court's previous practice of taking into account the attorney's disciplinary record when deciding upon the appropriate punishment. *See In re Vandercook, supra,* for example.

Furthermore, a statute is not retrospective merely because it relates to prior facts or transactions, where it does not change their legal effect. A statute (or rule) is not made retrospective by the fact that some of the requisites for its action are drawn from a time antecedent to its passage or because it fixes the status of a person for the purposes of its operation. *State v. Scheffel,* 82 Wn.2d 872, 514

P.2d 1052 (1973). In that case we held that a statute punishing habitual traffic offenders could be applied to those who had been guilty of previous violations of the act but were guilty of only one violation after its effective date. When the act was passed, we said, the defendants were put on notice that if they should be guilty of another violation, they would be classified as habitual offenders. The same principle applies here.

We are of the opinion, however, that the 2–year suspension which the disciplinary board has recommended is not warranted in the present circumstances. The suspension prescribed should be of sufficient length to impress upon the respondent the importance of attending to his clients' affairs with diligence and avoiding equivocation in dealing with them, as well to effect the other ends toward which an attorney's discipline is directed. *See In re Greenlee,* 82 Wn.2d 390, 510 P.2d 1120 (1973). It appears that a previous 45–day suspension did not accomplish this purpose, and it is obvious that a much greater period is required. However, the respondent has not been shown to be incompetent and his conduct has not been of such a grave nature as to warrant disbarment. A 2–year suspension, we fear, would put him so far out of touch with his profession as to affect his competency for future practice, a result which a disciplinary measure is not intended to produce. A period of 1 year, we believe, should be sufficient to accomplish the disciplinary purposes at stake here, without unduly diminishing the respondent's professional competency.

Accordingly, the respondent is censured with respect to counts 1 and 3; he shall be formally reprimanded with respect to count 2; and with respect to count 4, he is suspended from the practice of law for 1 year.

UTTER, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

STAFFORD, J.—I dissent. I strongly disagree with the 1–year suspension meted out by the majority. Such a suspension is wholly insufficient.

It must not be forgotten that in 1966 this respondent was reprimanded for neglect and delay of a case and for misrepresentations to clients. In 1967 he was censured for neglect and delay of two cases, for misrepresentations to clients, and for failure to cooperate with the investigation of the Local Administrative Committee of the bar. In 1970 Mr. Yates again was disciplined by the bar for the neglect of legal matters, which resulted in a 45–day suspension from the practice of law.

Today's case is a repeat of the same problems: neglect of legal matters entrusted to him; intentional failure to carry out a contract of employment for professional services; failure to cooperate with state bar counsel in the investigation of complaints against him; and a demonstrated unfitness to practice by reason of his repeated violations of the Code of Professional Responsibility. Although both the Hearing Panel and the Disciplinary Board of the Washington State Bar Association ultimately recommended a 2–year suspension from the practice of law, this court has reduced it to a mere 1–year suspension. I do not question the court's power in this regard. I question the wisdom of the reduced penalty.

This court has broad discretion in determining what action should be taken against an attorney who violates the Code of Professional Responsibility. Nevertheless, in exercising that discretion we should consider: (1) the seriousness and circumstances of the offense; (2) whether the punishment will be sufficient to prevent a recurrence; (3) whether the penalty will be sufficient to deter other practitioners from engaging in similar conduct; (4) whether the court's action is sufficient to restore and maintain respect for the honor and dignity of the profession; and (5) whether those who seek the services of lawyers will be assured that the penalties for unprofessional conduct will be strictly enforced. *In re Nelson*, 87 Wn.2d 77, 549 P.2d 21 (1976); *In*

*re Kennedy,* 80 Wn.2d 222, 492 P.2d 1364 (1972); *In re Pennington,* 73 Wn.2d 601, 440 P.2d 175 (1968).

The decision of the majority fails on all grounds, particularly on grounds (1), (2), (4) and (5) enumerated above. Both the serious nature of the latest violations and the fact of similar past violations of the Code of Professional Responsibility by respondent are circumstances demanding a more strict punishment than that meted out by the majority. The fact that respondent again is being disciplined within a relatively short period of time clearly indicates that past discipline failed to make any impression whatsoever. As a result the public has continued to be mistreated by this member of the bar. There is a grave question whether the action of the majority will provide the public with any assurance that the court will deal strictly with lawyers who handle their affairs unprofessionally. How can we hope to restore and maintain respect for the honor and dignity of the profession when we hesitate to give stronger discipline on the ground that it might put respondent out of touch with his profession? It seems to me that he is already so far out of touch with the basic tenets of the legal profession that we now should consider the public served by the profession if we hope to retain its respect. At a minimum respondent should be suspended from the practice of law for 2 years.

WRIGHT, C.J., and HAMILTON and BRACHTENBACH, JJ., concur with STAFFORD, J.