[No. C.D. 4305. En Banc. June 4, 1987.]

*In the Matter of the Disciplinary Proceeding Against* JEFFREY M. WITTEMAN, *an Attorney at Law.*

*Leland G. Ripley,* for Bar Association.

*Steven W. Thayer* and *Kurt M. Bulmer,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

In this lawyer discipline proceeding, the respondent Jeffrey M. Witteman was charged with seven acts of misconduct (counts 1 through 7). The hearing officer found that respondent had in fact committed these alleged violations and, based thereon and on respondent's prior disciplinary record (count 9), recommended disbarment. The Disciplinary Board unanimously agreed to strike two of these counts (counts 2 and 7) and by an 8 to 3 divided vote recommended that respondent be disbarred. We strike one additional count (count 1) and suspend respondent from the practice of law for 2 years, the maximum period of suspension authorized by the Rules for Lawyer Discipline.[1]

The acts of misconduct which resulted in the commencement of this proceeding arose out of respondent's failure to pay a doctor's bill out of the settlement proceeds in a personal injury case and his mishandling of another personal injury case. A summary of these counts approved by the Disciplinary Board is as follows.[2]

Count 1. Respondent was censured for failing to pay a treating doctor's bills out of settlement proceeds after promising the doctor in writing that "we will protect your interests in connection with [this matter], in the event any settlement is obtained through our office." RLD 1.1(i); CPR DR 1–102(A)(5). Respondent instead gave the proceeds to his client, who said she would pay the doctor, but she did not do so.

Counts 3–6. Respondent received a 90–day suspension for a series of violations in connection with a personal injury

---

[1]RLD 5.1(b).

[2]Reference herein to "counts" are to the counts in the hearing officer's supplemental findings of fact and conclusions of law. These, in turn, were keyed to the counts alleged in the formal complaint against respondent which was filed by state bar counsel. References are to the Rules for Lawyer Discipline (RLD) and to the Code of Professional Responsibility (CPR), 80 Wn.2d 1119, which is applicable herein (replaced by the Rules of Professional Conduct (RPC), effective September 1, 1985).

case arising out of an automobile accident. In count 3, he failed to name the injured client's husband as a party plaintiff although requested by the clients to do so. RLD 1.1(i); CPR DR 6–101(A)(3); CPR DR 7–101(A)(2). In count 4, he failed to obtain valid service on the defendant (who was an Oregon resident) or to use all lawful means in an effort to serve the defendant, such as using the service by publication statute and the service on nonresident motorists statute. RLD 1.1(i); CPR DR 6–101(A)(1); CPR DR 6–101(A)(3); CPR DR 7–101(A)(2); CPR DR 7–101(A)(3). In count 5, after the statute of limitations had run and the client's case had been dismissed, or was subject to dismissal, respondent went through an elaborate charade to conceal this fact including misrepresenting the legal status of the case to his clients until they personally examined the court file and discovered that their case had been dismissed. RLD 1.1(i); CPR DR 1–102(A)(4). In count 6, he failed to file a brief as to why the case should not be dismissed after the trial court delayed ruling on a motion to dismiss pending receipt of same. RLD 1.1(i); CPR DR 6–101(A)(3).

Count 8. In addition, respondent was reprimanded for failing to provide information concerning the foregoing, though twice requested in writing by bar counsel to provide the information. Respondent later complied with a subpoena duces tecum to this same effect. RLD 1.1(j); RLD 2.8(a).

Count 9. As will be further discussed herein, respondent's prior disciplinary record is also pertinent to the disposition to be made in the present disciplinary proceeding. In accordance with RLD 4.12, the allegations in count 9 were proved at the hearing as follows:

1975—Letter of censure for neglect of a legal matter and misrepresentation of the status of a client matter.

1981—30-day suspension for neglect, misrepresentation of the status of a client matter and for his criminal conviction for failure to file his federal in-

come tax return. *In re Witteman,* 95 Wn.2d 936, 631 P.2d 961 (1981).

1984—Reprimand for neglect of a client's legal matter.

There are two dispositive issues.

## ISSUES

ISSUE ONE. Is a lawyer discipline proceeding a proper forum in which to resolve a fee dispute between an expert witness for the client and the client's attorney?

ISSUE TWO. What is the appropriate sanction for respondent's violation of disciplinary rules in this case?

## DECISION

ISSUE ONE.

CONCLUSION. As a general rule, disputes concerning a bill or fees owed to an expert witness are not properly determinable in attorney discipline proceedings. In this case, count 1 of the complaint against respondent attorney involves such a dispute; therefore, we strike that count.

According to the findings of the hearing officer, respondent attorney contacted Dr. Douglas K. Held, a doctor of chiropractic who had treated his client, and requested a medical report. Before providing such a report, Dr. Held advised that he must first have a written statement from the respondent providing that Dr. Held's bill would be protected out of any settlement proceeds. While we are unaware of any legal basis for that demand, respondent provided this assurance. Dr. Held also required payment of $50 for his report and respondent paid it. Respondent ultimately paid his client's bill after Dr. Held filed a complaint with the bar association.

In the case of *In re Fraser,* 83 Wn.2d 884, 893, 523 P.2d 921 (1974), this court recognized "that the terms of a contract between attorney and client with regard to fees are not properly to be determined in a disciplinary proceeding" and that such disputes should properly be determined in civil proceedings. As therein pointed out, "[a]ny rule to the contrary would place the practicing attorney at the mercy of a scheming, malicious, or unreasonable client and could

throw him into an arena where his very reputation and career were at stake purely out of whim, malice, or irrational motive." *Fraser,* at 892, quoting *In re Greer,* 61 Wn.2d 741, 748, 380 P.2d 482 (1963).

█ By analogy, we consider such a rule to be appropriate in cases such as the present one which involves a dispute between an expert witness and the attorney over the bill owed to the expert witness. The gross amount of the settlement paid in this case was $2,500 and the doctor's bill was $1,089.59. The client demanded that the net proceeds (after payment of the $625 attorneys' fees) be paid to her whereupon she would pay the doctor. Under the circumstances, this dispute was one for resolution in the civil courts, not in a lawyer discipline proceeding.

ISSUE TWO.

CONCLUSION. We conclude that the proper sanction to be imposed herein is suspension for a period of 2 years, followed by a 2–year probationary period.

Aside from respondent's earlier conviction for failure to file an income tax return, respondent's problem is that over several years, in legal matters involving four separate clients, he got into trouble and then lied in an effort to conceal what had happened.

The factual conundrum in this case is how a lawyer who is professionally well regarded by judges and other lawyers in Vancouver, Washington, where respondent has practiced since 1969, has repeatedly gotten himself into the same type of predicament. The following excerpts are illustrative of the 22 affidavits of judges, lawyers and clients[3] filed in respondent's support.

As one superior court judge in Clark County, who is also a past president of the Clark County Bar Association,

[3]These 22 affidavits were filed pursuant to RLD 3.2(e) and are properly before us. Had bar counsel desired to file responding affidavits, this would have been permitted. See RLD 4.11(c)(3). The two letters from respondent's former law partners, attached to respondent's brief, are not properly before us and have not been considered. *See In re Kennedy,* 80 Wn.2d 222, 236–37, 492 P.2d 1364 (1972); *In re Thacker,* 35 Wn.2d 605, 619, 214 P.2d 507 (1950).

states:

> I have known Mr. Jeffrey M. Witteman for approximately 17 years both personally and professionally. I have had a first hand opportunity to observe his practice as a lawyer for approximately six years and since 1975 as a Superior Court Judge.
>
> Mr. Jeffrey M. Witteman has made numerous appearances before me in both civil and criminal cases. He has tried numerous bench and jury trials in my department and argued many motions as well. I have always found him to be well prepared, courteous, timely and professional in his dealings with clients, witnesses, counsel, members of the jury, and the court.
>
> Mr. Witteman has done a great deal of personal injury practice, both as plaintiff's and defense counsel, as well as retained and appointed felony defense before this court. I regard him as one of the better trial lawyers in the Clark County Bar and consider his court room demeanor to be well above average.
>
> I am well acquainted with Mr. Witteman personally as well, and much of what I have said about him as a lawyer is reflected in my opinion of him as a person.

Another judge states:

> I have known Mr. Jeffrey M. Witteman for approximately seventeen years, both personally and professionally. I have had the opportunity to observe his practice when I was a lawyer, as well as since being on the bench. He has appeared before me on numerous occasions, in both civil and criminal cases. Mr. Witteman has appeared in both bench and jury trials in my department, and has argued motions in relation to both civil and criminal cases on the Motions Docket.
>
> Mr. Witteman is generally well–prepared; is always courteous; has been timely and professional in both his dealings with clients, witnesses, counsel, members of the jury, and the Court.
>
> . . .
>
> Mr. Witteman has acted under our appointed felony defense contract, as well as representing retained clients, and has achieved good results in the matters in which he has presented to either the Court or to a jury. I consider him to be a good trial attorney, and his courtroom demeanor is above average.

Yet a third superior court judge in Clark County adds:

> Mr. Jeffrey Witteman has handled both criminal and civil cases in my courtroom over the past 15 years. He has handled those cases in an efficient and professional manner. He is courteous in the courtroom and presents himself well.

The State Bar hearing officer in this case, himself a former president of the State Bar Association, perhaps explained respondent's basic problem best. He put it this way:

> I am sure that we all have had the fleeting thought as we are heading to the courthouse for a trial, we know we can't win, that a large truck would gently run over us so that we can get another delay of time before we have to face reality, but our professional responsibility is that we have to face reality and there is a complete showing of immaturity in the respondent in facing reality.[4]

■ In the recent case of *In re Rentel,* 107 Wn.2d 276, 282, 729 P.2d 615 (1986), in deciding the appropriate sanction in a lawyer discipline case, we observed that "we have recourse to the very helpful analytical framework proposed by the American Bar Association, *ABA Standards for Imposing Lawyer Sanctions* (Approved Draft, 1986)." We then went on to state:

> In determining how best to fulfill the purposes of bar discipline in any given disciplinary case, the ABA Sanctions Committee recommends that four questions be addressed. We commend this analysis. The questions are as follows:
>
> 1. What ethical duty did the lawyer violate?
> 2. What was the lawyer's mental state?
> 3. What was the extent of the actual or potential injury caused by the lawyer's misconduct?
> 4. Are there any aggravating or mitigating circumstances?

(Footnote omitted.) *Rentel,* at 283.

Following this analytical framework in the case before us,

---

[4]Initial "Findings, Conclusions and Recommendations of Hearing Officer", at 6.

we observe that the *ethical duty* violated by respondent was the failure to exercise the requisite duty of diligence, competence and candor to his clients. As to respondent's *mental state,* this was initially negligence, but in connection with his extensive cover–up efforts became intentional. The *extent of the injury* caused was principally the loss of the clients' tort causes of action. Both aggravating and mitigating circumstances are present. The main *aggravating circumstances* are these: (1) respondent's extensive prior disciplinary record; (2) an inexcusable pattern of the same kinds of misconduct; and (3) respondent's initial failure to cooperate with the Bar. The principal *mitigating circumstances* are: (1) the respondent's good reputation among the bench and bar in the legal community in which he has practiced for many years; (2) the absence of any dishonest or selfish motives, at least prior to his cover–up efforts; and (3) the availability of restitution to his clients through malpractice insurance. Where, as here, a lawyer engages in a pattern of neglect and causes injury or potential injury to a client, either disbarment or suspension may be the appropriate sanction depending on the facts of the case.[5]

 The following principles are also pertinent to our decision on sanctions.[6] The ultimate decision regarding sanctions rests with this court and not the Disciplinary Board. Out of respect for the Board's expertise and experience over a wide range of disciplinary matters, however, we will ordinarily adopt the sanction recommended by the Disciplinary Board unless we are able to articulate specific reasons for adopting a different sanction. In this connection, we consider five factors in evaluating the Disciplinary Board's recommendations. These are whether the Board's recommended sanction: (1) is clearly insufficient to protect the public from future misconduct and to deter other

---

[5]*See ABA Standards for Imposing Lawyer Sanctions* §§ 4.41, 4.42 (Approved Draft, 1986).

[6]*In re Noble,* 100 Wn.2d 88, 95, 667 P.2d 608 (1983).

attorneys from such misconduct; (2) is disproportionate to the misconduct as measured by sanctions imposed in similar cases; (3) affects the attorney too harshly or too leniently in light of the nature of the misconduct; (4) is not supported by the record; and (5) was recommended by a unanimous rather than a divided Disciplinary Board.

In the case before us, we will particularly refer to factors numbered 5 (Board unanimity), 4 (support in the record) and 2 (proportionality).

Three members of the Disciplinary Board filed well reasoned written dissents from the disbarment decision and recommended suspension instead. Because of this divided vote, we may somewhat more readily consider sanctions other than disbarment.[7]

Further, as to the "support in the record" factor, the Board's disbarment recommendation was based in part on the count 1 findings and conclusions in the record as well as on "the lack of evidence of restitution or insurance to protect injured clients".[8] For the reasons discussed in connection with Issue One, we have now stricken count 1 which the Board considered. Furthermore, the State Bar's brief filed herein concedes that "since bar counsel has stipulated to the existence of malpractice insurance, the Board erroneously viewed a lack of such insurance as an aggravating factor."[9] Thus, count 1 is no longer in the case and, contrary to the Board's assumption, malpractice insurance does exist to cover the losses herein (a substantial factor in view of the public protection policy underlying the disciplinary rules).

The last of these factors we will examine is the "proportionality" of the sanction to the attorney's misconduct. In evaluating it, we will compare the Board's recommendation

---

[7]*Noble,* at 96.

[8]Order Modifying Hearing Panel Officer's Findings, Conclusions and Recommendation, at 3.

[9]Answering Brief of State Bar Association, at 45–46.

with the sanctions imposed in factually similar cases.[10] In some cases we have found the sanction of disbarment to be appropriate because of the particularly extensive pattern of client neglect involved.[11] In other cases, we have concluded that suspension was an appropriate sanction for neglect of client matters entrusted to the attorney's care.[12]

The length of the suspension depends on the facts and circumstances of each case, including the aggravating and mitigating circumstances found to be present.[13] As discussed above, respondent's disciplinary history shows that he neglected four clients and then made misrepresentations to them to cover up his neglect. The facts of this case (with count 1 stricken and the Board's finding of no errors and omissions insurance corrected) appear to us to be somewhat more proportional to our suspension cases[14] than to our disbarment cases.[15]

The Rules for Lawyer Discipline contain the following provision:

### SUSPENSION FOR CUMULATIVE DISCIPLINE

(a) **Grounds.** A lawyer may be suspended from the practice of law for a fixed period of time not exceeding 2 years upon accumulation of:

(1) Three or more censures and/or reprimands;

---

[10]*Noble,* at 95.

[11]*See In re Talbot,* 107 Wn.2d 335, 728 P.2d 595 (1986) (neglect of six client matters and mishandling of client funds); *In re Zderic,* 92 Wn.2d 777, 600 P.2d 1297 (1979) (neglect of 10 client matters and mishandling of retainer fees).

[12]*See In re Johnson,* 94 Wn.2d 659, 618 P.2d 1322 (1980) (60–day suspension for neglect of four estate matters); *In re Yates,* 90 Wn.2d 767, 585 P.2d 1164 (1978) (1–year suspension for neglect of four client matters); *In re Nelson,* 87 Wn.2d 77, 549 P.2d 21 (1976) (60–day suspension for neglect of four client matters); *In re Vandercook,* 78 Wn.2d 301, 474 P.2d 106 (1970) (30–day suspension for neglect of four client matters).

[13]*Johnson,* at 663; *see Noble,* at 95.

[14]See footnote 12.

[15]See footnote 11.

(2) Any combination of a suspension or disbarment plus one or more censures or reprimands.

RLD 5.4(a). The facts of this case bring it squarely within this cumulative discipline rule.

For the specific reasons articulated above, we conclude that a suspension under the cumulative discipline rule (RLD 5.4) is more appropriate than disbarment. Because of the serious aggravating factors hitherto discussed, the maximum suspension of 2 years will be imposed followed by a probationary period. As a condition to respondent's reinstatement, he shall establish to the bar that during his 2–year suspension he has maintained the continuing legal education requirements required of members of the bar, but with emphasis on law office management and procedures, along with maintaining and updating his knowledge of the law relating to the personal injury field in which he has primarily practiced.[16] After returning to practice, respondent shall be subject to 2 years' probation.[17] The special terms of that probation are that he will: be subject to the supervision of a suitable person appointed by the chairperson of the Board;[18] establish a modern office "tickler" or "diary" system satisfactory to his supervisor; and make quarterly written status reports of his entire case load to his supervising attorney in the form and detail required by that attorney.[19]

Having decided this case on the basis stated, we do not address respondent's remaining assignments of error.

Respondent is ordered suspended from the practice of law for a period of 2 years (with credit for the time he has

---

[16]See Standards § 2.7; Florida Bar v. Glick, 383 So. 2d 642, 643 (Fla. 1980).

[17]See RLD 5.2(a).

[18]See RLD 5.2(a).

[19]See Florida Bar v. Neale, 432 So. 2d 50, 51 (Fla. 1983); In re Hessberger, 96 Ill. 2d 423, 431, 451 N.E.2d 821 (1983); In re Maragos, 285 N.W.2d 541, 547 (N.D. 1979).

been suspended to date) and to pay the State Bar Association's costs herein. Upon readmittance to practice, respondent will be on probation for an additional 2–year period, subject to the special probation conditions set forth herein.

PEARSON, C.J., and DOLLIVER, CALLOW, and DURHAM, JJ., concur.

DORE, J. (concurring)—I agree with the majority that a 2–year suspension is in order. I do not believe, however, that the majority should base its decision on the factors set forth in *In re Noble,* 100 Wn.2d 88, 667 P.2d 608 (1983). Rather, I adhere to my earlier position in *In re Selden,* 107 Wn.2d 246, 257, 728 P.2d 1036 (1986) (Dore, J., concurring), that *Noble* should be overruled.

GOODLOE, J., concurs with DORE, J.

BRACHTENBACH, J. (dissenting)—I dissent and would adopt the recommendation of the Disciplinary Board for disbarment.

The majority first dismisses count 1 on the ground that "disputes concerning a bill or fees owed to an expert witness are not properly determinable in attorney discipline proceedings." Majority, at 285. The plain facts are: (1) Witteman made a commitment of his client's funds without the client's authority; (2) the lawyer promised, in writing, that "we will protect your interests in connection" with the doctor's bill (the propriety of the doctor's request is irrelevant); (3) the lawyer violated that written promise and made no effort to resolve the conflict when he had an opportunity to do so; (4) the lawyer repeatedly neglected the matter over a period of 2 years 3 months; (5) the lawyer lied to the doctor's office about the matter; and (6) the lawyer fulfilled his promise only after a complaint was made to the bar.

The facts on count 1 are not disputed. The claim was settled in May 1983, the net funds were disbursed to the client in violation of the lawyer's written guaranty. In

October, Witteman represented to the doctor's staff that the case was still pending, even though it had been settled 5 months earlier. He blames this on confusion with another case. Despite some 32 phone calls from the doctor's staff, and repeated billings, Witteman did nothing, except lie, until a complaint was made to the bar. The bill was finally paid in August 1985, 27 months after the case was settled.

The majority, at 285, cites as authority *In re Fraser,* 83 Wn.2d 884, 523 P.2d 921 (1974), for the proposition that attorney–client fee disputes are not to be resolved in a disciplinary proceeding. That is a correct statement but it has nothing to do with this case. That principle does not, or certainly should not, protect an attorney from the consequences of making an unauthorized promise of his client's funds, violating that promise, lying about the matter, and then neglecting the matter. Yet, that is what the majority condones. I agree with the hearing officer that Witteman's conduct involved dishonesty and misrepresentation. Count 1 should be upheld.

In determining the sanctions the majority cites three mitigating factors. Majority, at 289.

First is the lawyer's good reputation among the bench and bar in his legal community. The only "evidence" on this factor is not properly before the court; presumably the majority refers to affidavits filed by Witteman. The majority states that the affidavits were filed pursuant to RLD 3.2(e) and are properly before us. See footnote 3.

RLD 3.2(e) relates to an answer to the mandatory petition for suspension, after a recommendation of disbarment. The affidavits were filed at that stage as an effort to meet the attorney's burden to avoid suspension pending the hearing on the underlying disciplinary proceedings. Despite those affidavits Witteman was suspended on June 12, 1986.

Recognizing that these affidavits were not part of the record in the disciplinary proceedings, Witteman moved to supplement the record in the main disciplinary case. That motion was passed to the hearing on the merits. The majority brings them into the main record by virtue of the

fact they were filed in an earlier, interim action.

Witteman moved to supplement because of his failure to produce *any* proof before the hearing officer concerning his fitness to practice law. He contends that he had no notice that in the hearing his fitness to practice was in question. His contention is indicative of his adherence to the rules of the game. Paragraph 43 of the formal complaint explicitly alleges that the charged misconduct was in violation of RLD 1.1(p) which prohibits conduct demonstrating *unfitness* to practice law. Despite that notice Witteman presented no evidence at the disciplinary hearing. As alleged in the complaint the bar relied upon the pending charges, plus his prior record, to demonstrate the alleged unfitness.

Witteman, and now the majority, attempt to deny the bar an opportunity to meet the evidence which Witteman advances through the affidavits. These affidavits are often conclusory; those few which contain facts stand unchallenged by the bar since the bar is precluded from such opportunity by the tactics employed by Witteman and endorsed by the majority.

This use of the affidavits by the majority to mitigate the sanction is particularly ironic since those affidavits failed to convince this court that Witteman should not be suspended pending a hearing. At the motion stage this court determined that Witteman should be suspended because his continuation of practice pending the hearing would result in "substantial harm, loss or damage to the public." Order of June 12, 1986.

The majority contends that RLD 4.11(c)(3) permitted the submission of counter affidavits. That section relates to the hearing process. It proves my very point, that Witteman gave no proof subject to cross examination. If Witteman had met this issue at the time and in the proceeding, the evidence could have been met as contemplated by the rules. The majority permits the attorney to take a chance on the outcome and then submit evidence by affidavit without a right of challenge, other than by affidavit, which is also not subject to cross examination—hardly the way to

get at the truth.

The affidavits were insufficient in June. Now the majority deems them adequate to constitute one of three mitigating factors. They are now adequate enough to help the majority overcome the reasoned findings and recommendation of the hearing officer and eight members of the Disciplinary Board.

The next mitigating circumstance relied on by the majority is the absence of any dishonest or selfish motives. Majority, at 289. The majority states the proposition, no facts, just a conclusion. Witteman's mendacity carries its own badge of dishonesty. The selfish motive of using dishonesty to cover his acts of ethical violations is apparent. Clearly Witteman misrepresented matters solely for his own benefit.

The dissents in the disciplinary proceedings recognize the absence of this mitigating factor. Dissenting Board member Schultz states that the conduct "appears to be accompanied by willfulness, deceit and gross negligence." Dissenter Goodwin states that Witteman's carelessness and neglect were "followed by dishonest and untrue statements in an effort to conceal the errors he had made." The third dissenter adopted Goodwin's views.

If count 1 is allowed to stand, the Disciplinary Board would impose a letter of censure; on counts 3 through 6, the Board recommends suspension for 90 days and a reprimand on count 8. Thus, over a period of 11 years Witteman has accumulated the following:

1. Letter of censure for neglect and misrepresentation;

2. Thirty–day suspension for neglect, misrepresentation and a criminal conviction;

3. Reprimand for neglect of a client's legal matter;

4. Letter of censure for an act involving dishonesty and engaging in conduct prejudicial to the administration of justice;

5. Suspension for 90 days for neglect, intentional failure to carry out a contract of employment, handling a matter when he knew or should have known that he was not com-

petent to handle, intentional prejudice or damage to a client, conduct involving dishonesty, fraud, deceit or misrepresentation and failure to cooperate.

6. A reprimand on count 8 for failure to cooperate in the investigation of a complaint.

Interestingly, the majority does not mention the aggravating factors which may justify an increase in the discipline to be imposed. The *ABA Standards for Imposing Lawyer Sanctions* § 9.22, at 64 (Approved Draft, 1986) lists 10 aggravating factors. *Eight of those aggravating factors are present here.* They are:

(a) prior disciplinary offenses;
(b) dishonest or selfish motives;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

. . .

(g) refusal to acknowledge wrongful nature of conduct;

. . .

(i) substantial experience in the practice of law;
(j) indifference to making restitution.

The existence of most of these factors is apparent from the facts and record. Bad faith obstruction of the proceedings is clear. At the outset Witteman failed or refused to answer bar staff inquiries after a client complaint. A second inquiry was ignored. Pertinent files were produced only after a subpoena duces tecum was issued.

As to remorse, Witteman produced nothing at the hearing. Not until the Board issued its decision did Witteman even acknowledge the question of his remorse. In a June 1986 affidavit, 6 months after the hearing, Witteman stated that he does feel a great degree of remorse as to the Kohrdt matter only. He states that he is at a loss to determine any factual basis in the record below other than his failure to appropriately articulate such remorse to the Board. He states that at the initial hearing remorse was never raised and, therefore, he did not have an opportunity to state his

feelings. He obviously does not understand his function as a respondent. Given an opportunity to make a statement to the hearing officer, he chose to stand on his response to the original complaint. That response was a one line denial of everything alleged.

Concerning restitution, the record is unclear except as to the fact that damages to clients Kohrdt were not paid until Witteman was sued. Payment to the doctor, count 1, was made only after a complaint was made to the bar and then some months after he promised the bar it would be paid immediately. Witteman finally paid the doctor as he had promised to do years earlier.

This payment is somewhat akin to restitution. Here again his attitude toward professional ethics is apparent. He had promised in writing to pay the bill out of settlement proceeds. His explanation was "I guess I didn't consider it my obligation" other than to remind the client it had to be paid—a sad commentary on the integrity of a member of the bar.

Restitution should be of marginal influence in any event. The lawyer is simply paying the client for wrongs which should not have happened.

Witteman's conduct over a period of 11 years clearly shows a repetitive pattern of neglect and misrepresentation. He obviously does not learn from his serious mistakes. Enough effort, time, expense and frustration has been spent by involved clients, the bar, Disciplinary Board members, hearing officers and this court.

The majority apparently recognizes that Witteman will pose a potential danger to the public even after a 2–year suspension. He will be on probation for 2 years. For 2 years we require local supervision over Witteman, including overseeing his diary system and receipt of quarterly written status reports of his entire case load.

At the least, I would add to the majority's conditions of suspension and probation. As a condition to reinstatement after the 2–year suspension, I would require certification, under oath, of compliance with the majority's conditions,

including a specific statement that he has not practiced law during suspension. Further, as a condition of reinstatement, I would require Witteman to pass the ethics portion of the State Bar examination. During probation, his quarterly reports should include any complaints from his clients about his handling of their legal matters.

I would follow the recommendation of the experienced, distinguished hearing officer and the eight members of the Disciplinary Board and disbar.

UTTER, J., concurs with BRACHTENBACH, J.

Reconsideration denied September 4, 1987.